IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:09-cv-00449

| | |
|---|---|
| R. DANIEL BRADY *et al.*, ) | |
| ) | |
| Plaintiffs, ) | MOTION TO DISMISS |
| ) | FED. R. CIV. P. 12(b)(2) |
| v. ) | |
| ) | |
| XE SERVICES LLC *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT JEREMY P. RIDGEWAY'S MOTION TO DISMISS

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and Local Rule 7.2, Defendant Jeremy P. Ridgeway ("Defendant" or "Mr. Ridgeway"), by and through undersigned counsel, submits this Memorandum in Support of his Motion to Dismiss. In support of his Motion, Defendant states as follows:

### SUMMARY OF ARGUMENT

Mr. Ridgeway is a resident of California, who was served in California, and who held a job in Iraq for a company incorporated in Delaware whose principal place of business is in Virginia. The allegations which comprise the subject matter of Plaintiffs' Complaint (the "Complaint") took place solely in Iraq. Mr. Ridgeway has *de minimis* contacts with North Carolina – none in connection with the actions alleged in the Complaint. Mr. Ridgeway has been to North Carolina once, where he spent portions of a two week vetting session – essentially an extended job interview – in Moyock, North Carolina. Additionally, Mr. Ridgeway, upon his

return from Iraq due to an injury, exchanged a small number – less than ten – of emails and/or phone calls with administrators in Moyock who were handling a disability claim for his insurer – who is based in Illinois – for injuries suffered by Mr. Ridgeway in Iraq. That is it. In no way has Mr. Ridgeway availed himself of the benefits and protections of North Carolina law, let alone in a manner that is "continuous and systematic." This case should be dismissed.

## NATURE OF THE ACTION

Plaintiffs are Iraqi residents and the estates of Iraqis asserting tort claims for injuries allegedly suffered in Iraq as a result of actions that occurred in Iraq. They seek to recover damages in North Carolina from individuals – including Mr. Ridgeway – who they allege to have committed these actions, as well as from the government contractor corporations who allegedly employed them.

## STATEMENT OF THE FACTS

Mr. Ridgway worked for the company now known as Defendant Xe Services, LLC – which at the time was known as EP Investments, LLC d/b/a Blackwater Worldwide and Blackwater USA ("Blackwater"), a contractor of the Department of State – as a private security contractor supporting the Worldwide Personal Protective Services II Contract ("WPPS II Contract") in Baghdad, Iraq from approximately December 27, 2006 through October 5, 2007. Declaration of Jeremy P. Ridgeway ("Ridgeway Decl.") ¶ 4. While employed by Blackwater in Iraq, Mr. Ridgeway served as a contractor under the auspices of Task Order 6 of the WPPS II Contract. Ridgeway Decl. ¶ 9. His service, including the tasks which are the subject matter of this litigation, was limited to the particular job responsibilities that a contractor employed under the Task Order of that WPPS II Contract must carry out. Thus, on information and belief, Mr. Ridgeway did not complete any tasks at the direction of any Blackwater personnel or Blackwater

entity in North Carolina. *Id*. Specifically, Mr. Ridgeway was told to *never* contact anyone at the facilities in Moyock, North Carolina or in Virginia, and that any contact with supervisors should take place in Baghdad, Iraq. Ridgeway Decl. ¶ 10.

Mr. Ridgeway's specific assignment was with Blackwater's Raven 23 tactical support team ("Raven 23") in Baghdad, Iraq. Ridgeway Decl. ¶ 8. Mr. Ridgeway joined Raven 23 in Baghdad, Iraq, and was trained and evaluated by Raven 23 in Baghdad, Iraq. *Id*. Mr. Ridgeway had never met, worked with, or corresponded with any of the individual Defendants in this case or with any of my superiors at Blackwater's facility in Iraq prior to being in Iraq. *Id*.

Prior to his employment with Blackwater, Mr. Ridgeway participated in a two-week vetting period – essentially an extended job interview – which took place in part at what is now known as U.S. Training Center, Inc., in Moyock, North Carolina (the "Vetting Period"). Ridgeway Decl. ¶ 12. This was Mr. Ridgeway's first, and to date only, visit to North Carolina. *Id*. The other portions of the Vetting Period took place in Virginia Beach, Virginia. Ridgeway Decl. ¶¶ 14-15. After the Vetting Period – where Blackwater determined that Ridgeway would be offered employment – on approximately December 27, 2006, Mr. Ridgeway traveled to Baghdad, Iraq from his home in California to begin his employment. Ridgeway Decl. ¶ 4. The events alleged in Plaintiffs' Complaint occurred in Iraq on September 16, 2007. Complaint ¶¶ 68-78.

Mr. Ridgeway left Baghdad, and as a result, Blackwater, after he suffered an injury in the field. Ridgeway Decl. ¶¶ 16-17. This injury took place after, and is distinct from, the events alleged in the Complaint. *Id*. After returning from Baghdad to his home in California, Mr. Ridgeway communicated occasionally, via e-mail and/or telephone, with Blackwater administrators in Moyock, North Carolina before his disability claim was turned over to his

3

insurer, who was based in Illinois. Ridgeway Decl. ¶ 17.

## ARGUMENT

### I. Standards for Personal Jurisdiction in North Carolina

In North Carolina, courts have jurisdiction over certain defendants, including those domiciled in North Carolina, those present in North Carolina when served with process, and those engaged in substantial activity in North Carolina. *See* N.C. Gen. Stat. § 1-75.4(1). Plaintiffs concede that Defendant is not domiciled in North Carolina, and instead is "a citizen and resident of the State of California." Compl. ¶ 43. Likewise, Defendant was not served with process in North Carolina but in California. *See* Ridgeway Decl. ¶ 3.

Under North Carolina's long-arm statute, courts in this state have limited jurisdiction over certain defendants, including those that act in North Carolina causing injury anywhere or those that act elsewhere causing injury in North Carolina, provided that the defendant availed himself personally of the privilege of doing business in North Carolina. *See* N.C. Gen. Stat. § 1-75.4(3), (4). The North Carolina long-arm statute extends to the limit permissible under the Due Process Clause. *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982). Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such "minimal contacts" with the forum state that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

The Supreme Court has articulated two tests for determining whether a defendant's contacts with a forum suffice to confer personal jurisdiction over the defendant pursuant to the Due Process Clause. If the cause of action does *not* arise from or relate to the defendant's activities in the forum, plaintiffs must prove that the defendant's contacts are "continuous and

systematic" and so support the exercise of *general* personal jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415-16 (1984). Essentially, the relationship between the forum and the defendant must be such that the defendant should "reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). General jurisdiction does not exist unless defendants' contacts with this State are so extensive, systematic, and continuous that they approximate physical presence. *Lab. Corp. of America Holdings v. Schumann,* 474 F. Supp. 2d 758, 765 (M.D. N.C. 2006), *citing Helicopteros Nacionales,* 466 U.S. at 414 nn. 8, 9, 104 S.Ct. at 1872 nn. 8, 9;

If the cause of action *does* arise out of or is related to the defendant's activities within the forum, the plaintiff need only prove that a court has *specific* personal jurisdiction over a defendant by demonstrating that

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice[.]

*Lesnick v. Hollingsworth & Vose* Co., 35 F.3d 939, 945-46 (4th Cir. 1994).

North Carolina courts look at the following factors in determining whether minimum contacts exist: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interest of the forum state; and (5) the convenience to the parties. *Replacements, Ltd v. MidweSterling*, 133 N.C. App. 139, 143 (1999). Under North Carolina law, the Defendant must purposefully avail himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Tom Togu, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365 (1986).

## II. Specific Jurisdiction Cannot Apply Here; The Acts Alleged in the Complaint Have No Relation to Mr. Ridgeway's Contacts With North Carolina.

Plaintiffs give no indication in their Complaint that they would seek to invoke specific jurisdiction over Mr. Ridgeway. Rather, Plaintiffs allege jurisdiction in the Complaint solely through the use of the "systematic and continuous" language associated commonly with general jurisdiction. Compl. ¶ 46. Further, the Complaint alleges that Defendant's purported conduct in Iraq forms the basis for their causes of action, *see, e.g.*, Compl. ¶¶ 66-89, and not any conduct in North Carolina.

However, should the Plaintiffs seek to belatedly allege specific jurisdiction, this allegation would be unfounded. Mr. Ridgeway had no contact with North Carolina during the time that he worked in Baghdad, Iraq, and in fact was told *specifically not to contact anyone* at the facility in Moyock. By design, the North Carolina portion of Blackwater had no connection with the Baghdad portion of Blackwater.

Mr. Ridgeway's tasks in Baghdad and accordingly, the events alleged in the Complaint, fell entirely under the purview of the WPPS II Contract and had nothing to do with any presence that Blackwater had in North Carolina at the time. Any separate entity of Blackwater in North Carolina could not, and did not, play any role in the tasks that Mr. Ridgeway performed. His assigned task force, Raven 23, and the individuals therein, also had no connection with North Carolina.

As noted below, Mr. Ridgeway's only connections with North Carolina came prior to his employment with Blackwater during the Vetting Period and while he was in the process of leaving his employment with Blackwater – phone calls and emails with an administrator who was processing his insurance paperwork for his Illinois insurer. Every event that could possibly

6

be connected with the events alleged in the Complaint, whether it be the events themselves, Raven 23, Mr. Ridgeway's training, evaluations, or orders from his superiors have no ties to North Carolina. There is no basis for Plaintiffs to allege specific jurisdiction in this matter.

### III. Mr. Ridgeway's Limited Contacts with North Carolina do not Meet the Standards for General or Specific Jurisdiction.

As there is no specific jurisdiction here, this Court should analyze Mr. Ridgeway's contacts with North Carolina under the "systematic and continuous" standard for general jurisdiction. Plaintiffs cannot dispute that Mr. Ridgeway's contacts with North Carolina fall *far short* of the continuous and systematic contacts necessary to support the exercise of general jurisdiction. *See e.g.*, *Southard v. D'Amelio*, 2004 WL 3321487, *5 (W.D.N.C. 2004) (No general or specific jurisdiction found where a contract, isolated communications and occasional trips to North Carolina were defendant's contacts with North Carolina)("*Southard*"). Even if the Court were to apply the "minimum contacts" standard, Mr. Ridgeway's *de miminis* contacts would still not meet the minimum standards set forth for specific jurisdiction. In an effort to avoid repetition, this section will address Mr. Ridgeway's contacts with the forum state as they relate to both standards.

Mr. Ridgeway had some limited contact with the state immediately prior to this employment, and some limited contact at its conclusion, and no other contact before the employment, during the employment, or after the employment (until the filing of this suit). The only contacts that Mr. Ridgeway had with North Carolina consisted of his time spent there during the Vetting Period – a two week period where Mr. Ridgeway spent time in North Carolina for the day-time portion of some, but not all, days – and some limited correspondence with administrative officials regarding his disability benefits at the end of Mr. Ridgeway's time with Blackwater. *See* Ridgeway Decl. ¶¶ 11-17.

In *CEM Corp. v. Personal Chemistry AB*, 192 F. Supp. 2d 438 (W.D. N.C. 2002) ("*CEM*"), the Court dismissed the matter due to the lack of personal jurisdiction against Personal Chemistry. In *CEM*, the defendant's contacts with North Carolina consisted primarily of a trip to North Carolina to negotiate a contract, telephone calls and fax transmissions to North Carolina during the negotiations of the contact, and a one-time payment pursuant to the contract to the plaintiff corporation in North Carolina. The contract itself dealt with actions which took place entirely in Sweden. Similarly, the actions here took place entirely in Iraq, and Mr. Ridgeway took only a single trip to North Carolina, and took part in a few isolated communications with individuals in North Carolina. CEM was affirmed in an unpublished opinion by the Fourth Circuit, which noted that "[o]ne visit to the state, accompanied by a few telephone calls and faxes to settle litigation initiated against it in Sweden would not put the defendant on notice that it should reasonably anticipate being haled into court. *CEM Corp. v. Personal Chemistry AB*, 55 Fed Appx. at 625, 2003 WL 122510 at *3

*Le Bleu Corp. v. Standard Capital Group*, 11 Fed. Appx. 377, 2001 WL 672066 (4th Cir, 2001) ("*Le Bleu*") also has similar facts to the instant case. In *Le Bleu* – which involved a dispute over a contract for financial advice – the Fourth Circuit affirmed the District Court's dismissal of a complaint for lack of specific jurisdiction where the contract between the plaintiff North Carolina corporation and defendant California corporation was signed in North Carolina, the defendant's employees made two visits to North Carolina, the parties exchanged mail and telephone calls relating to the contract, and where a payment was mailed from North Carolina. The contacts in *Le Bleu*, though minimal, still are more sizeable than the contacts in this matter – where the contacts are limited to visits and correspondence.

*Southard, CEM* and *Le Bleu* have similar facts to the instant case; the main difference

being that Mr. Ridgeway has fewer contacts with the forum and his case does not relate sufficiently for the Court to apply the "minimum contacts" standards for specific jurisdiction. As such, Mr. Ridgeway's case for dismissal is arguably stronger than that of *Southard, CEM*, and *Le Bleu* – all of which were dismissed.

## CONCLUSION

Plaintiffs have failed to establish any basis, whether general or specific, by which this Court can properly exercise personal jurisdiction over Defendant.

WHEREFORE, Defendant Ridgeway requests that the Court grant his Motion to Dismiss the Complaint for lack of personal jurisdiction, dismissing him from this case.

Respectfully submitted this the 24th day of December, 2009.

By: /s/ Edward H. Maginnis
Edward H. Maginnis (Bar No. 39317)
**MAGINNIS LAW**
6030 Creedmoor Road, Suite 200
Raleigh, NC 27612
Telephone: 919.526.0450
Facsimile: 919.882.8763
emaginnis@maginnislaw.com

Jack M. Knight, Jr. (Bar No. 21145)
**WINSTON & STRAWN LLP**
214 North Tryon Street
Charlotte, North Carolina 28202-1078
Telephone: 704.350.7700
Facsimile: 704.350.7800
jknight@winston.com

*Counsel for Defendant Jeremy P. Ridgeway*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused copies of the foregoing Memorandum in Support of Defendant Jeremy P. Ridgeway's Motion to Dismiss to be transmitted on December 24, 2009, to all counsel registered to receive electronic service:

James A. Roberts III
jimroberts@lewis-roberts.com
LEWIS & ROBERTS, PLLC
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612

Gary V. Mauney
garymauney@lewis-roberts.com
LEWIS & ROBERTS, PLLC
5960 Fairview Road, Suite 102
Charlotte, NC 28210

*Attorneys for plaintiffs*

Eric H. Cottrell (N.C. Bar No. 21994)
ecottrell@mayerbrown.com
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, North Carolina 28202
(704) 444-3500
(704) 377-2033 (fax)

*Attorneys for Defendants Xe Services LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd. and Erik Prince*

Keith Harrison Johnson
kjohnson@poynerspruill.com
POYNER SPRUILL LLP
P.O. Box 1801
301 Fayetteville St., Suite 1900
Raleigh, NC 27602-1801

*Attorneys for defendants Donald Wayne Ball, Dustin L. Heard, Evan Shawn Liberty, Nicholas Abram Slatten, and Paul Alvin Slough*

Jack M. Knight, Jr.
jknight@winston.com
WINSTON & STRAWN LLP
214 North Tryon Street
Charlotte, NC 28202-1078

*Attorneys for defendant Jeremy P. Ridgeway*

/s/ Edward H. Maginnis
Edward H. Maginnis