IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:09-cv-00449

| | |
|---|---|
| R. DANIEL BRADY ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| XE SERVICES LLC ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DECLARATION OF JEREMY P. RIDGEWAY**
**IN SUPPORT OF HIS MOTION TO DISMISS**

JEREMY P. RIDGEWAY, of full age, hereby declares as follows:

1. I am a resident of California and a defendant in the above-captioned matter.

2. This Declaration is submitted in support of my Motion to Dismiss, which seeks to dismiss the Complaint against me for lack of personal jurisdiction.

3. I was served with process in this case at my home in Fallbrook, California.

4. I worked for the entity doing business as Blackwater Worldwide and Blackwater USA ("Blackwater"), formerly known as EP Investments, LLC and now known as Defendant Xe Services LLC, from approximately December 27, 2006 through October 5, 2007. I worked for Blackwater in my capacity as a private security contractor supporting the Worldwide Personal Protective Services II Contract ("WPPS II Contract") in Baghdad, Iraq.

5. I understand that the Plaintiffs have alleged that Blackwater Worldwide and Blackwater USA are both incorporated in Delaware, and both have a principal principal place of business is in Virginia. I have no reason to believe that these allegations are inaccurate.

6. Nearly all of my time working for Blackwater was spent in Baghdad, Iraq.

7. My employment agreement with Blackwater was signed by an individual identified as "Blackwater USA Management" and as "Director WPPS Programs Blackwater USA."

8. I trained and worked with Blackwater's Raven 23 tactical support team ("Raven 23") in Baghdad, Iraq, and was evaluated in Baghdad, Iraq. I had never met, worked with, or corresponded with any of the individual Defendants in this case or with any of my superiors at Blackwater's facility in Iraq prior to being in Iraq.

9. While employed by Blackwater in Iraq, I served as a contractor under the auspices of Task Order 6 of the WPPS II Contract. My service was limited to the particular job responsibilities that a contractor employed under the WPPS II Contract must carry out, and I do not believe that I ever performed any tasks at the direction of any Blackwater personnel in Moyock, North Carolina.

10. While employed by Blackwater, any contact that I had with my supervisors at Blackwater took place in Baghdad, Iraq; in fact, I was specifically told to *never* contact anyone at the facilities in Moyock, North Carolina or in Virginia.

11. My contacts with the state of North Carolina have been extremely limited.

12. From a date on or about October 2006 through a date on or about November, 2006, I participated in an approximately two-week vetting period conducted by Blackwater,

some of which took place in Moyock, North Carolina (the "Vetting Period"). This was, to date, the first and only time that I have traveled to North Carolina.

13. This Vetting Period allowed Blackwater to determine whether or not I was qualified to work for them. The Vetting Period was, essentially, a two-week job interview.

14. I was compensated during this Vetting Period, but was paid significantly less than my ultimate Blackwater starting salary. Had I not successfully completed this two-week Vetting Period, I would have not been hired by Blackwater, would have not been paid for my time and would have been required to reimburse Blackwater for my travel expenses to and from Virginia Beach, Virginia.

15. I spent each night, and some of the days, of this Vetting Period in Virginia Beach, Virginia. Consequently, the longest continuous time period that I have ever spent in North Carolina is approximately 12 hours.

16. On information and belief, I have never spoken with anyone in North Carolina over the telephone, other than (1) my counsel in this matter, and (2) potentially, a few discrete and short phone calls which I may have had with a Blackwater representative concerning my disability insurance. With respect to the latter, I believe that most—if not all—of such calls took place after the incident on September 16, 2007 and after I was no longer employed by Blackwater.

17. Of the hundreds of emails which I sent or received from Blackwater personnel which arose during the course of my employment, I believe that less than 10 in any way related to individuals based in Moyock, North Carolina. I believe that this small subset of emails related to my disability coverage stemming from injuries which I sustained and for which I subsequently

filed a disability claim. The emails pursuant to that coverage-related incident took place on or about October, November and December of 2007.

19. Aside from the foregoing, I believe that I have not had any other contact with the State of North Carolina.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of December, 2009.

_____
Jeremy P. Ridgeway