IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case 5:09-cv-449-BO

R. DANIEL BRADY, ET AL.,       )
                               )
    Plaintiffs,                )
                               )
vs.                            )    PLAINTIFFS' REPLY
                               )    MEMORANDUM OF LAW IN
XE SERVICES LLC,               )    SUPPORT OF MOTION FOR REMAND
BLACKWATER SECURITY CONSULTING )
LLC, ET AL.,                   )
                               )
    Defendants.                )
_____)

James A. Roberts, III (N. C. Bar No. 10495)   Gary V. Mauney (N.C. Bar No. 22190)
jimroberts@lewis-roberts.com                  garymauney@lewis-roberts.com
LEWIS & ROBERTS, PLLC                         LEWIS & ROBERTS, PLLC
3700 Glenwood Avenue, Suite 410               5960 Fairview Road, Suite 102
Raleigh, NC 27612                             Charlotte, NC 28210
Telephone:919-981-0191                        Telephone:704-347-8990
Facsimile: 919-981-0199                       Facsimile: 704-347-8929

Brooke N. Albert (N.C. Bar No. 36584)         Paul R. Dickinson, Jr. (N.C. Bar No. 20510)
brookealbert@lewis-roberts.com                pauldickinson@lewis-roberts.com
LEWIS & ROBERTS, PLLC                         LEWIS & ROBERTS, PLLC
3700 Glenwood Avenue, Suite 410               5960 Fairview Road, Suite 102
Raleigh, NC 27612                             Charlotte, NC 28210
Telephone:919-981-0191                        Telephone:704-347-8990
Facsimile: 919-981-0199                       Facsimile: 704-347-8929

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | iii |
| BLACKWATER CONTROLLED ITS OWN ACTIONS AT NISUR SQUARE | 2 |
| NO NEXUS EXISTS BETWEEN BLACKWATER'S CONDUCT AT NISUR SQUARE AND ITS CONTRACTUAL OBLIGATIONS TO THE STATE DEPARTMENT | 2 |
| THE COURT SHOULD FOLLOW THE GOVERNMENT SECURITY CONTRACTOR DECISION IN *PARLIN V. DYNCORP* | 8 |
| OTHER POINTS | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Akin v. Ashland,* 156 F.3d 1030, 1034 (10th Cir. 1998) .................................................................. 1

*Blackwater Sec. Consulting, LLC v. Wiley Rein, LLP*
    2008 WL 5520166 (D.C. Super. Ct. Dec. 30, 2008) .................................................................. 4, 5

*Cowan v. Laughridge Constr.,* 57 N.C. App. 321, 325, 291 S.E.2d 287, 290 (1982) .................... 10

*Deuley v. Dyncorp Int'l,* 588 F. Supp. 2d 539 (D. Del. 2008) ............................................................ 8

*Faulk v. Owens-Corning,* 48 F. Supp. 2d 653, 663-64 (E.D. Tex. 1999) ...................................... 6, 7

*Feidt v. Owens-Corning,* 153 F.3d 124, 127 (3rd Cir. 1998) .............................................................. 8

*Frielberg v. Swinerton,* 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002) .............................................. 6

*Grable v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005) .................................................................. 9

*Guillory v. Ree's Contract Service, Inc.,* 872 F. Supp. 344, 347 (S.D. Miss. 1994) ........................ 5

In *Parlin v. Dyncorp International,* 579 F. Supp. 2d 629, 636 (D. Del. 2008) ................................ 8

*In re: Blackwater Consulting,* LLC, 460 F.3d 576 (4th Cir. 2006) .................................................... 4

*In re: Methyl Tertiary Butyl Ether Prod. Liab. Litig.,* 488 F.3d 112, 124 (2d Cir. 2007) .............. 8

*Jefferson County v. Acker,* 527 U.S. 423, 431 (1999) .................................................................... 3, 6

*Maryland v. Soper,* 270 U.S. 9, 33 (1926) ............................................................................................ 8

*Mesa v. California,* 489 U.S. 121, 124-25, 126-35 (1989) .............................................................. 3, 7

*Nordan v. Blackwater Security Consulting,* LLC, 382 F. Supp. 2d 801 (E.D.N.C. 2005) .............. 4

*Regional Medical v. Highmark, Inc.,* 2008 WL 936925 (E.D. Pa. 2008) .......................................... 8

*Ryan v. Dow Chemical Co.,* 781 F. Supp. 934, 939, 947 (E.D.N.Y. 1992) .............................. 5, 7, 8

*Saleh v. Titan Corp.,* 580 F.3d 1 (D.C. Cir. 2009) ................................................................................ 9

*Taylor v. Comsat Corp.,* 2006 WL 3246508, *3 (S.D. W.Va. 2006) .................................................. 6

*Virden v. Altria Group, Inc.,* 304 F. Supp. 2d 832, 844 (N.D. W.Va. 2004) .................................. 3, 6

# TABLE OF AUTHORITIES
## (Continued)

*Watson v. Phillip Morris Companies, Inc.,*
  551 U.S. 142, 147, 151-52, 153-54 (2007) ................................................................. 4, 5, 6, 7

*Weese v. Union Carbide,* 2007 WL 2908014, *6 and *7 (S.D. Ill. 2007) ............................................. 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case 5:09-cv-449-BO

| | |
|---|---|
| R. DANIEL BRADY, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | **PLAINTIFFS' REPLY** |
| vs. ) | **MEMORANDUM OF LAW IN** |
| ) | **SUPPORT OF MOTION TO REMAND** |
| XE SERVICES LLC, ) | |
| BLACKWATER SECURITY CONSULTING ) | |
| LLC, ET AL., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs respectfully submit this reply memorandum of law in support of their Motion to Remand.[1] The Blackwater defendants invoke the federal officer removal statute, 18 U.S.C. § 1442(a)(1), claiming that during the times at issue, they acted under color of federal office, performing a "national security" function, pursuant to "detailed contracts," particularly the "WPPS II," through which "the State Department exercised substantial control over all aspects of [Blackwater's] performance." D.E. 35 at 9. The WPPS II actually reveals that Blackwater itself controlled the specifics of its "personal protective services function" (otherwise, why hire the company in the first place?). Moreover, the undisputed facts of the matter are that Blackwater was not protecting anyone on September 16, 2007

---

[1] The defined terms set forth in Plaintiff's Memorandum of Law in Support of Motion to Remand are incorporated by reference. Exhibits to this reply are cited as "Ex. ___." Defendant Jeremy P. Ridgeway ("Ridgeway"), the removing defendant in Case 5:09-cv-450, did not file a brief opposing plaintiffs' Motion to Remand. Even though removal under 28 U.S.C. § 1442(a)(1) can be effected by one defendant acting alone, *Akin v. Ashland*, 156 F.3d 1030, 1034 (10th Cir. 1998), Ridgeway is not a defendant in this particular case. Since defendant Ridgeway did not so file, there is no argument to reply to in that matter and plaintiffs have submitted none.

at Nisur Square, and that Blackwater was not acting pursuant to any federal direction or control when the shootings occurred.

## BLACKWATER CONTROLLED ITS OWN ACTIONS AT NISUR SQUARE

The WPPS II plainly granted Blackwater's management the power and authority to oversee the day-to-day operations of its Iraq-based Protective Security Details (PRS Detail[s]) such as Raven 23.[2] The WPPS II provisions call for a Shift Leader or Team leader, employed by Blackwater, to "manage and direct protective security operations on a day-to-day basis" and to "[d]irectly supervis[e] protective security specialists[.]" Ex. 1 at 47. The Shift Leader or Team Leader is in turn supervised by multiple layers of Blackwater supervisory and management personnel. *Id.* at 38, 43-48 (1.2 "Project Manager"; 1.3 "Deputy Project Manager Operations (DPMO)"; 2.1 'Protective Security Specialist (PSS)/Operations Chief (PSOC)"; 2.2 "Detail Leader"; 2.3 "Deputy Detail Leader"). Blackwater was even required to maintain workers' compensation and third party liability insurance. *Id.* at 82, 83. The WPPS II also stated that "[t]he Contractor, including all Contractor-provided personnel, shall comply with all of the laws of the United States and the host countries in which they are required to provide services under this contract." *Id.* at 6 ("LAWS").

## NO NEXUS EXISTS BETWEEN BLACKWATER'S CONDUCT AT NISUR SQUARE AND ITS CONTRACTUAL OBLIGATIONS TO THE STATE DEPARTMENT

Blackwater cannot demonstrate that the shootings at Nisur Square were causally connected in any way to the performance of its work for the State Department. The shootings were not the product of any direct and detailed instructions of or regulations by any federal officer. To sustain removal jurisdiction, Blackwater must demonstrate that a

---

[2] Plaintiffs' Exhibit 1 submitted herewith contains cited portions of the WPPS II.

2

causal nexus existed between the Nisur Square shootings and a federal officer obligation. Blackwater has not put forward one shred of evidence making this connection. In fact, at the time of the shootings, Blackwater's "Raven 23 Convoy had not been authorized [by any federal superior] to depart from the International Zone on September 16, 2007." D.E. 1-3, ¶ 7 ("Ridgeway Proffer"). [3]

The Supreme Court set forth the mandatory federal officer removal test under § 1442(a)(1) in *Mesa v. California*, 489 U.S. 121, 124-25, 126-35 (1989). This test requires Blackwater to demonstrate (1) that it acted under the direction of a federal officer, (2) that it has some colorable basis to raise a federal defense to the plaintiffs' claims, and (3) that it can demonstrate a real causal nexus between the plaintiffs' claims and acts defendants performed under the purported color of federal office. *Id.* "The [purported] federal officer must show a nexus, a 'causal connection,' between the charged conduct and asserted official authority." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999)(internal citation omitted).

***Blackwater must demonstrate that "the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."*** *Virden v. Altria Group, Inc.*, 304 F. Supp. 2d 832, 844 (N.D. W.Va. 2004) (emphasis added). Blackwater "must by direct averment exclude the possibility that it [the state court action] was based on acts or conduct . . . not justified by [its] federal duty." *Mesa*, 489 U.S. at 132. Nothing of the sort has occurred here. Instead,

---

[3] Blackwater contends that plaintiffs are somehow requiring defendants to "prove the merits" of their defenses as part of this Motion. To the contrary, defendants have the responsibility of making a sufficient evidentiary showing to justify jurisdiction. Such a showing requires colorable evidence of a causal nexus between the Nisur Square shootings and defendants' purported federal obligations.

3

Blackwater has merely asserted the completely attenuated fact that its employees were in Iraq under a State Department contract to provide security. There has been no averment that the Nisur Square shootings were the result of any orders from any government official (or any regulation commanding the same). There has been no averment that defendants were providing any protective services to anyone at Nisur Square.

It is not enough to simply say: We had a contract with the State Department, therefore we went to Iraq to perform that contract, therefore we acted under color of federal office when we engaged in the shootings at Nisur Square. This is not a causal sequence, this is a non-sequitur. Section 1442(a)(1) must be liberally construed - but its "broad language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Watson v. Phillip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). The Court should draw that limit right here.

Blackwater studiously avoids application of the actual, operative facts in the Complaint to the controlling authority.[4] It is ironic that at page six of their response memorandum, defendants cite the Court to *Blackwater Sec. Consulting, LLC v. Wiley Rein, LLP*, 2008 WL 5520166 (D.C. Super. Ct. Dec. 30, 2008) (Ex. 2). In that case, Blackwater sued its prior defense counsel for malpractice that allegedly occurred during the wrongful death defense of *Nordan v. Blackwater Security Consulting, LLC*, 382 F. Supp. 2d 801 (E.D.N.C. 2005), *aff'd sub nom. In re: Blackwater Consulting*, LLC, 460 F.3d 576 (4th Cir. 2006). As Blackwater puts it, its former lawyers committed malpractice by "fail[ing] to invoke the federal officer removal statute [in *Nordan*]." *See* D.E. 35 at 12. Blackwater's § 1442(a)(1) arguments in *Wiley Rein* were short lived. After converting the law firm defendants' motion

---

[4] Blackwater repeatedly recounts what it says it was supposed to do under the WPPS II, not what actually happened at Nisur Square on September 16, 2007.

4

to dismiss into "one for summary judgment," the Court dismissed two separate claims of § 1442(a)(1) federal officer jurisdiction made by Blackwater. First, Blackwater claimed it was a "battlefield contractor" acting under "the United States Department of Defense and/or the United States Department of the Army." Second, Blackwater claimed that it "agreed in its contracts to follow Department of State procedures regarding Diplomatic Security Services, Rules of Engagement, and Deadly Force Policy, as approved by the U.S. Embassy [in Iraq]." *Wiley Rein*, 2008 WL at pp. 7-9. The *Wiley Rein* Court concluded that Blackwater was due no § 1442(a)(1) removal jurisdiction on these grounds as a matter of law. *Id.*

The *Wiley Rein* Court dismissed the notion that Blackwater's contractual agreements to abide by rules of conduct and performance standards, such as the State Department's Deadly Force Policy, met the removal standards set forth in *Watson*. *Id.* (citing *Watson*, 551 U.S. at 153-54). The court reasoned: "A majority of courts have held that [for § 1442(a)(1) jurisdiction to exist,] the federal official must have 'direct and detailed control' over the defendant." *Id.* at 6. (Citing *Guillory v. Ree's Contract Service, Inc.*, 872 F. Supp. 344, 347 (S.D. Miss. 1994)(citing *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992)). And that control must causally relate to the plaintiffs' claims. *Id.* Just because the State Department's "policies and procedures have been promulgated and approved by a government agency, [Blackwater's] compliance with the law does not constitute the close or direct supervision required by section 1442." *Id.* at 8; and *see Watson*, 551 U.S. at 153.

Blackwater's showing here fares no better: Blackwater cannot claim that the conduct at issue was "lawfully assisting [a] federal officer in the performance of his official duty;" it cannot claim the Nisur Square shootings were the product of federal "control;" and

5

it cannot claim that any highly detailed regulations made the shootings necessary. *Watson*, 551 U.S. at 151-52. Even after "crediting" Blackwater's theory of the case, these facts pose insurmountable jurisdictional obstacles.

Blackwater cannot demonstrate a specific causal nexus between any federal "direction and control" or "regulation" and the shootings at Nisur Square. There is no such nexus. Blackwater **"*must show a nexus between the charged conduct and asserted federal authority.*"** *Taylor v. Comsat Corp.*, 2006 WL 3246508, *3 (S.D. W.Va. 2006) (quoting *Jefferson Cty.*, 527 U.S. at 431)(internal marks omitted)(emphasis added). **Blackwater cannot demonstrate, in any plausible way, that "the acts that form the basis for state civil or criminal suits were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations."** *Id.* (quoting *Virden*, 304 F. Supp. 2d at 844)(emphasis added). Blackwater has not and cannot make such a showing. There is no evidence "that the federal agencies or their officers . . . prevent[ed] [Blackwater] from fulfilling its duties . . . under [North Carolina or Iraqi] law." *Id.*, *4. *See also Frielberg v. Swinerton*, 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002)(defendants made no showing of a causal connection and failed to show that the federal agency's "direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards"); *Faulk v. Owens-Corning*, 48 F. Supp. 2d 653, 663 (E.D. Tex. 1999) ("federal government . . . did not prevent Defendants from taking their own safety precautions heeding state-law standards").

"What removing defendants must establish for purpose[s] of Section 1442(a)(1) is that the government authority under which they worked *required them to act as they did,*" that is "they must establish [that the government's] direction and control of their activities

6

*directly interfered with their ability to fulfill their state law obligation." Frielberg*, 245 F. Supp. 2d at 1155 (emphasis added). Since Blackwater cannot meet this requirement, it falsely asserts that *Watson* merely requires a showing of some "special relationship" between the contractor and the federal government. D.E. 35 at 16. That is not the holding from *Watson*:

> As we have pointed out, however, differences in the degree of regulatory detail or supervision cannot by themselves transform [the removing party's] regulatory *compliance* into the kind of assistance that might bring the FTC within the scope of the statutory phrase *"acting under"* a federal "officer" . . . And, though we find considerable regulatory detail and supervision, we can find nothing that warrants treating the FTC/Phillip Morris relationship as distinct from the usual regulator/regulated relationship.

*Id.* at 157. The nearly universal stream of authority, from federal jurisdictions across the country, confirms that allegations of general federal control are not enough to invoke § 1442(a)(1) jurisdiction. ***"It is [the removing party's] burden to show that it took actions at the specific direction of a federal officer, and that those actions caused the injuries alleged by [plaintiffs] in this case."*** *Weese v. Union Carbide*, 2007 WL 2908014, *6 (S.D. Ill. 2007)(emphasis added); accord *Mesa*, 489 U.S. at 131. ***To "establish the causal nexus sufficient to satisfy the acting under prong of the test for federal officer removal, a removing defendant must show that the 'the federal officer really did 'make them do it.'"*** *Weese* at *7 (quoting *Faulk*, 48 F. Supp. 2d at 664)(emphasis added). Blackwater cannot make this showing.

Blackwater cannot show that the State Department's orders or regulations prompted the events at Nisur Square - much less that a "federal officer made them do it." Blackwater has not shown in any way that its conduct was the product of any "direct and detailed control" by the State Department. *See Ryan v. Dow Chemical Co.*, 781 F. Supp. 934,

7

947 (E.D.N.Y. 1992)("the acts that form the basis for the state civil or criminal suit [must be] performed pursuant to an officer's direct orders or to comprehensive and detailed regulations"). Accord *In re: Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007). There must be a specific "'causal connection between what the [purported federal] officer has done under asserted official authority and the state prosecution.'" *Ryan* at 939 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). Blackwater cannot make this connection. There is nothing in the WPPS II, or in any State Department regulation or rule, that proximately caused or directed, in any serious sense, the shootings to occur at Nisur Square. This is the showing that Blackwater was required to make and it has not. *See Regional Medical v. Highmark, Inc.*, 2008 WL 936925, *6 (E.D. Pa. 2008)(citing *Feidt v. Owens-Corning*, 153 F.3d 124, 127 (3rd Cir. 1998)(there must be a causal nexus between the plaintiffs' specific claims and the conduct performed under color of purported federal office).

## THE COURT SHOULD FOLLOW THE GOVERNMENT SECURITY CONTRACTOR DECISION IN *PARLIN V. DYNCORP*

This is not the first time a federal court has been asked to remand a wrongful death case involving a private security contractor in Iraq. In *Parlin v. Dyncorp Int'l*, 579 F. Supp. 2d 629, 636 (D. Del. 2008), the Court analyzed and rejected removal arguments nearly identical to those Blackwater is making here. *See also Deuley v. Dyncorp Int'l*, 588 F. Supp. 2d 539 (D. Del. 2008)(same outcome). For instance, the *Dyncorp* defendants argued that they "were implementing and administering the United States CIVPOL mission in Iraq" when the plaintiff sustained his injuries. *Id.* at 635. The *Dyncorp* Court concluded that "[a]t most, Defendants have shown they were acting under the general auspices of the Department of State." As a result, the Court held that ***"Defendants have not established***

8

*that the acts forming the basis of Plaintiff's action . . . were taken pursuant to a federal officer's direct orders or to comprehensive and detailed regulations." Id.* at 636. This is perhaps the most on-point authority available for the issue at hand. And, not surprisingly, the Court in *Dyncorp* remanded on the same grounds urged here – that no causal nexus exists between the Nisur Square shooting and any direct order or regulatory obligation imposed by any federal officer or agency. Having failed to demonstrate the required causal nexus, the Court lacks removal jurisdiction under § 1442(a)(1).

## OTHER POINTS

Two final points about a couple of Blackwater's other arguments. Defendants removed in part based upon *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), citing the pre-emption doctrine under the Federal Tort Claims Act and "other federal principles." Blackwater Removal at ¶ 12. As plaintiffs pointed out in their opening remand memorandum, Blackwater's work was not plausibly "integrated into combatant activities." This fact vitiated the application of *Saleh*'s principal holding as applied to the instant defendants' removal. As a result, defendants claimed that removal should be sustained in any event under *Saleh* because "[a]rguments for pre-emption of state prerogatives are particularly compelling in times of war." *Id.*, 12-13. It is not serious to contend that this case would place the state of North Carolina in the position of "federal wartime policy-making." *Id.* Nor is this a situation where the "very imposition of any state law create[s] a conflict with federal foreign policy interests." *Id.*

Next, in an attempt to circumvent the wide body of law disfavoring removals under the auspices *Grable v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005), defendants make a number of claims that would create an avalanche of federal *Grable* jurisdiction. Defendants

9

claim, for instance, that plaintiffs allege, at Complaint ¶ 111, that "the ICs were negligent per se because they allegedly failed to discharge duties of care ... [under] rules of conduct and engagement (e.g., Mission Firearms Policy)." D.E. 35 at 26-27. Plaintiffs have not alleged a single claim of negligence per se. *See, e.g., Cowan v. Laughridge Constr.*, 57 N.C. App. 321, 325, 291 S.E.2d 287, 290 (1982)(federal OSHA violations are "evidence" of negligence). Blackwater's violations of various federal regulations or rules are simply evidence of negligence. Every day in North Carolina state courts, various federal regulations are used as evidence of a duty of care – without making every such case a "federal case." Likewise, defendants' arguments that suing them in state court will curtail "the government's ability to find contractors" is almost ridiculous. Perhaps Blackwater believes every government contractor should be exempt from state court jurisdiction, but that is not the law.

## CONCLUSION

Blackwater has improperly invoked federal removal jurisdiction in a case involving traditional state law claims of wrongful death and personal injury.

This the 12th day of January, 2010.

/s/ James A. Roberts
James A. Roberts, III
N. C. State Bar No. 10495
jimroberts@lewis-roberts.com
Brooke N. Albert
N.C. State Bar No. 36584
brookealbert@lewis-roberts.com
**LEWIS & ROBERTS, PLLC**
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Telephone: 919-981-0191
Facsimile: 919-981-0199

/s/ Gary V. Mauney
Gary V. Mauney
N.C. Bar No. 22190
garymauney@lewis-roberts.com
Paul R. Dickinson, Jr.
N.C. Bar No. 20510
pauldickinson@lewis-roberts.com
**LEWIS & ROBERTS, PLLC**
5960 Fairview Road, Suite 102
Charlotte, NC 28210
Telephone: 704-347-8990
Facsimile: 704-347-8929

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Eric H. Cottrell
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, NC 28202

> *Attorneys for Defendants Xe Services, LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd. and Erik Prince*

| | |
|---|---|
| Keith Harrison Johnson<br>POYNER SPRUILL LLP<br>P. O. Box 1810<br>301 Fayetteville St., Suite 1900<br>Raleigh, NC 27602-1801<br><br>*Attorneys for defendants Donald Wayne Ball, Dustin L. Heard, Evan Shawn Liberty, Nicholas Abram Slatten, and Paul Alvin Slough* | Jack M. Knight, Jr.<br>WINSTON & STRAWN LLP<br>214 North Tryon Street<br>Charlotte, NC 28202-1078<br><br>Edward H. Maginnis<br>MAGINNIS LAW<br>6030 Creedmoor Road, Suite 200<br>Raleigh, NC 27612<br><br>*Attorneys for defendant Jeremy P. Ridgeway* |

/s/ Gary V. Mauney
Gary V. Mauney (N.C. Bar No. 22190)
garymauney@lewis-roberts.com
**LEWIS & ROBERTS, PLLC**
5960 Fairview Road, Suite 102
Charlotte, NC 28210
Telephone: 704-347-8990
Facsimile: 704-347-8929
*Attorney for Plaintiff*