# EXHIBIT 2

Westlaw.

2008 WL 5520166 (D.C.Super.)                                                                                          Page 1

H

Superior Court for the District of Columbia,
Civil Division.
BLACKWATER SECURITY CONSULTING, LLC, et al., Plaintiffs,
v.
WILEY REIN, LLP, et al., Defendants.
No. 2008 CA 000530 M.
December 30, 2008.

Order Granting Plaintiffs' Motion for Reconsideration of the Court's May 27, 2008 Order Granting Defendants'
Motion to Dismiss and Granting Defendant's Motion for Summary Judgment

Mark W. Foster, Esq., Elizabeth G. Taylor, Esq., Zuckerman Spaeder LLP, 1800 M Street, N.W., Washington,
D.C. 20036, mfoster@zuckerman.com, etaylor @zuckerman.com, Attorneys for Defendants.Barry J. Nace, Esq.,
Paulson & Nace, 1615 New Hampshire Avenue, N.W., Third Floor, Washington, D.C. 20009, bjn@lawtort.com,
Attorney for Plaintiffs.

Jennifer M. Anderson, Judge.
Calendar 9

The court has before it Blackwater Security Consulting, LLC, and Blackwater Lodge and Training Center, Inc.'s
(plaintiffs') Motion for Reconsideration of the Court's May 27, 2008, Order Granting Defendants' Motion to Dis-
miss, Wiley Rein, LLC, and Margaret A. Ryan, Esq.'s (defendants') opposition, Plaintiffs' reply, Supplemental to
Plaintiff's Motion for Reconsideration, defendants' response, as well as the numerous exhibits filed by each party.

Plaintiffs brought suit against defendants for legal malpractice in connection with a lawsuit in North Carolina
state court (*Nordan* lawsuit) in which the defendants acted as plaintiffs' defense counsel.[FN1] Plaintiffs allege
that defendants committed legal malpractice in failing to remove the case to federal district court pursuant to
section 1442 of title 28 of the United States Code and that this was a violation of the applicable standard of care.
Plaintiffs claim that the subsequent remand to state court resulted in expenses both in connection with the failed
efforts to remove the action and unnecessarily defending the wrongful death suit.

> FN1. The suits involving the removal at issue include *Nordan v. Blackwater Security Consulting, LLC,*
> No. 05-CVS-000173 (N.C. Sup. Ct. Wake *Cty.),; Nordan v. Blackwater Security Consulting, LLC,* 382
> F. Supp. 2d 801 (E.D.N.C. 2005) (denying defendants' motion to dismiss under the Defense Base Act
> and remanding the case to state court); and *McQuown v. Blackwater Security Consulting, LLC,* 460
> F.3d 576 (4th Cir. 2006), cert. denied, 127 S. Ct. 1381 (2007) (denying an appeal for lack of jurisdiction
> and denying petition for writ of mandamus).

On May 27, 2008, the Honorable Judith Retchin granted the defendants' Motion to Dismiss on the grounds that
plaintiffs could not prove actual loss or damage. Judge Retchin did not reach defendants' second argument,
namely that the federal officer removal statute did not apply to the plaintiffs. On June 10, 2008, Plaintiffs filed a
Motion for Reconsideration of the Court's May 27, 2008 Order Granting Defendants' Motion to Dismiss under
D.C. Superior Court Rule 60 of Civil Procedure.[FN2] On July 18, 2008, Judge Retchin issued an Order recus-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

ing herself from the case and the Motion to Reconsider then was assigned to this court.

> FN2. The aspect of this motion arguing misapplication of precedent would more appropriately be filed under Rule 59(e) asking for amendment of a judgment claiming the court's mistake of law regarding the availability of damages in the form of attorneys fees and court costs.

For the reasons stated below, the court grants plaintiff's Motion to Reconsider the May 27, 2008 Order Granting Dismissal. In doing so, however, the court then considers defendants' second argument as to the applicability of Section 1442. After reviewing the pleadings and the exhibits, the court treats the previous Motion to Dismiss as one for summary judgment, which the court now grants.

## I. Legal Standards

### A. Standard for Reviewing a Matter under Rule 60

"A motion for reconsideration asserting that the court committed an error of law will ordinarily be regarded as a motion under Rule 59(e) to alter or amend a judgment if it is filed within 10 days from the date on which the judgment or order was entered." *In re Tyree,* 493 A.2d 314, 317 n.5 (D.C. 1985). Section (a) of Rule 60 applies only to errors that are clerical in nature or are founded in omission or oversight failure, but substantive errors are corrected under Rule 59(e) or section (b) of Rule 60. *See Clement v. District of Columbia Dep't of Human Servs.,* 629 A.2d 1215, 1218 (D.C. 1993). D.C. Superior Court Rule of Civil Procedure 60 holds in relevant part:
(b) *Mistakes, inadvertence; excusable neglect; newly discovered evidence, fraud, etc.* On motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59 (b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.

Section (b) should be liberally construed. *Starling v. Jephunneh Lawrence & Assocs.,* 495 A.2d 1157, 1159 (D.C. 1985).

Ultimately, the decision whether to relieve a party from a final judgment pursuant to Rule 60 (b) is committed to the sound discretion of the trial court. *See e.g., Jones v. Hersh,* 845 A.2d 541, 544 (D.C. 2004); *Starling,* 495 A.2d at 1159; *Reid v. District of Columbia,* 634 A.2d 423, 425 (D.C. 1993); *Debose v. Ramada Renaissance Hotel,* 710 A.2d 880, 881 (D.C. 1998).

### B. Conversion of Motion to Dismiss to a Motion for Summary Judgment

When reviewing a Motion to Dismiss under Rule 12(b)(6), the court must construe the pleadings in the light most favorable to the non-moving party. *See Atraqchi v. GUMC Unified Billing Servs.,* 788 A.2d 559, 562 (D.C.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2002). "Dismissal under Rule 12(b)(6) is proper only when the moving party can show beyond doubt that the non-moving party is unable to prove any set of facts to support his claim." *District of Columbia v. Pizzulli,* 917 A.2d 620, 623 (D.C. 2007).

However, when both sides present affidavits and other exhibits to supplement their pleadings, a court may treat the motion as a motion for summary judgment under Rule 56. *See Doolin v. Environmnetal Power, Ltd.,* 360 A.2d 493, 496 n.5 (D.C. 1976). A memo of points and authorities to a motion to dismiss need not be considered outside the pleadings. *See Bernay v. Sales,* 435 A.2d 398, 401 (D.C. 1981). Courts are concerned about considering material outside the complaint when the plaintiff is not afforded an opportunity to present factual material in response. *See Kitt v. Pathmakers,* 672 A.2d 76, 80 (DC 1996). Between the pleadings, motions, responses, supplements, and all with attendant exhibits, both parties have been afforded ample opportunity to support their cases.

### C. Standard for Summary Judgment

To prevail on a motion for summary judgment, the moving party must establish, based upon the pleadings, discovery, and any affidavits or other materials submitted, that there is no genuine issue as to any material fact and that it is therefore entitled to judgment as a matter of law. *Grant v. May Dep't Stores Co.,* 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56(c). A trial court considering a motion for summary judgment must view the evidence in the light most favorable to the non-moving party and may grant the motion only if a reasonable jury, having drawn all reasonable inferences in favor of the non-moving party, could not find for the non-moving party based upon the evidence in the record. *Grant,* 786 A.2d at 583 (citing *Nader v. De Toledano,* 408 A.2d 31, 42 (D.C. 1979)); *Bailey v. District of Columbia,* 668 A.2d 817, 819 (D.C. 1995). The moving party has the initial burden of proving that there is no genuine issue of material fact in dispute. If the moving party carries its initial burden, then the non-moving party assumes the burden of establishing that there is an issue of material fact genuinely in dispute. *Grant,* 786 A.2d at 593 (citing *O'Donnell v. Associated Gen. Contractors of Am., Inc.,* 645 A.2d 1084, 1086 (D.C. 1994)). The non-moving party may not simply rest on conclusory allegations or denials of the movant's pleadings to establish that a genuine issue of material fact is in dispute. *Boulton v. Inst. of Int'l Educ.,* 808 A.2d 499, 502 (D.C. 2002); Super. Ct. Civ. R. 56(e). Furthermore, the court will grant the motion unless the moving party's factual allegations are countered with specificity. *Miller v. Am. Coal. Of Citizens with Disabilities, Inc.,* 485 A.2d 186, 191 (D.C. 1984). Where the non-moving party fails to meet the burden of demonstrating that he has stated a cause of action, then no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. *Smith v. Wash. Metro. Area Transit Auth.,* 631 A.2d 387, 390 (D.C. 1993).

### II. Statement of Facts

ESS Support Services Worldwide (ESS), as a private contractor for the U.S. Military in Iraq, was in the business of providing catering support services and design and build services to U.S. Armed Forces. Subsequently, ESS signed an agreement with Regency Hotel & Hospitality Company (Regency), in association with Blackwater Security Consulting, Inc. (Blackwater), whereby Regency, through Blackwater, would provide security services for ESS. Regency had a separate contract with Blackwater providing the terms of security services to be provided.

On January 5, 2005, suit was filed in the Superior Court of Wake County, North Carolina, against plaintiffs in this case for wrongful death. Defendants in this case acted as counsel for plaintiffs. Defendants removed the matter to federal district court without citing 28 U.S.C. Section 1442 among the grounds for removal. Finding

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

insufficient grounds for removal, the federal district court in the Eastern District of North Carolina remanded the case back to state court. As a result, plaintiffs were compelled to litigate the matter in state court.

On January 23, 2008, plaintiffs brought this legal malpractice action against defendants. Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. On May 27, 2008, the Honorable Judith Retchin granted the Defendants' Motion to Dismiss finding that plaintiffs could not prove actual loss or damage, while reserving the matter of whether Section 1442 was applicable to the removal proceedings. On June 10, 2008, the Plaintiffs filed a Motion to Reconsider the Court's order dismissing the case.

This court reiterates the reasoning of the Supreme Court: "Although for the purposes of [a] motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allian,* 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir. 1981)). Specifically, plaintiffs' allegations, both that they are "entitled" to removal under "battlefield contractor" status, and that dismissal in federal court would have been the only appropriate remedy, shall be disregarded.

III. Analysis

A proper claim for legal malpractice contains the following elements: "(1) [the attorney's] duty to use such skill, prudence and diligence as other members of this profession commonly possess and exercise, (2) a breach of that duty, (3) a proximate causal connection between the negligent conduct and the resulting injury, and (4) actual loss or damage resulting from [the attorney's] negligence." *Mount v. Baron,* 154 F. Supp. 2d 3, 8 (D.D.C. 2001) (citing *Shapiro, Lifschitz & Schram, P.C. v. R. E. Hazard, Jr., Ltd. Pshp.,* 24 F. Supp. 2d 66, 74 (D.D.C. 1998)). Previously the court ruled that actual loss or damage had not been established. The plaintiffs allege that defendants' failure to cite section 1442 as a grounds for removal breached their duty of care during representation of clients, resulting in non-speculative damages.

A. Demonstration of Compensable Injury

The May 27, 2008 Order Granting Defendant's Motion to Dismiss stated the "Court finds no underlying injury" and dismissed the complaint for failure to state a claim upon which relief can be granted. *Id.* at 4-5. The court notes that *Knight v. Furlow* stands for the proposition that plaintiffs could recover at least the costs associated with the failed efforts at removal in the *Nordan* suit, if in fact plaintiffs were entitled to removal under grounds not pursued by the defendants. 533 A.2d 1232, 1236 (D.C. 1989).

Accordingly, the court turns its attention to defendants' second argument, which Judge Retchin did not address. Defendants argue that Section 1442 was not available to the plaintiffs as a ground for removal and therefore there could be no breach of the standard of care. If that were the case, any error on the part of Judge Retchin as to the availability of arbitration in federal court and speculative nature of resulting damages would be harmless error under D.C. Superior Court Rule 61 of Civil Procedure.

B. Removal under 28 U.S.C. 1442 (Federal Officer Removal Statute)

Plaintiff's complaint alleges that "[a]s a 'battlefield contractor' acting under an agency of the United States, to wit the United States Department of Defense and/or the United States Department of the Army, Blackwater was entitled to remove the Nordan lawsuit to Federal Court pursuant to 28 U.S.C. § 1442." [FN3] Complaint at 10-11. Although private parties may occasionally make use of the mechanisms of this statute, and the statute

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

should be "liberally construed," the "broad language is not limitless." *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2305 (2007).

> FN3. Section 1442(a)(1), the federal removal statute, provides, in pertinent part, "A civil action ... commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (a) The United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ...."

The Supreme Court set forth a test for the applicability of Section 1442(a)(1) in *Mesa v. California*, 489 U.S. 121 (1989). It required the moving party to demonstrate that it (1) acted under the direction of a federal officer, (2) raises a federal defense to the plaintiffs' claims, and (3) demonstrates a causal nexus between the plaintiffs' claims and acts the party performed under color of federal office. *See Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 699 (S.D. Tex. 2002) (explaining the *Mesa* test set forth on pages 124-25 and 134-35 of *Mesa*).

Particularly at issue in this case is what it means to be "under the direction" of a federal officer. Recently, in *Watson*, the Supreme Court stated that the relationship of a private person "acting under" a federal officer or agency "typically involves 'subjection, guidance, or control.' " 127 S. Ct. at 2307. Cases in which close supervision turns a private contractor into a private firm "acting under" a Government agency or officer are held so because "the private contractor in such cases is helping the Government to produce an item that it needs." *Id.* at 2308. Although this case did not ultimately address a private contractor directly, this standard is a reflection of the Court's previous holdings on the subject. *Id.*

A number of federal district courts have also addressed the subject, which this court finds persuasive. "A majority of courts have held that the federal official must have 'direct and detailed control' over the defendant." *Guillory v. Ree's Contract Service, Inc.*, 872 F. Supp. 344, 347 (S.D. Miss. 1994) (citing *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992).

The Middle District of Florida applied section 1442 to a private government subcontractor because it presented "evidence of more than vague Governmental control" of operations. *McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1197 (M.D. Fla. 2006). In *McMahon*, the contractor was hired by the government under LOG-CAP, subject to government requirements on personnel and equipment to transport ammunition. The court found it "likely that the Government would not allow transportation of military personnel and ammunition ... without retaining a significant amount of control over the operation." *Id.* at 1196-97.

The Southern District of Mississippi also addressed this issue, choosing to deny removal under section 1442. *See Guillory, supra*, 872 F. Supp. at 347. The court found that the defendant did not demonstrate an adequate level of detailed direction, notwithstanding general oversight by a federal officer. *Id.* In *Guillory*, a private security company contracted with the U.S. government to provide security for a Veteran's Administration building. The contract contained vague directives such as "maintain law and order," perform "such functions as may be necessary" and take "all necessary precautions." *Id.* These broad orders belie any "direct and detailed control" over the contract performance, despite an officer of the General Services Administration overseeing the contract. *Id.*

Together, these cases suggest that to meet the first element of the *Mesa* test, a government contractor must prove that it was subject to government direction with some level of specificity. To examine the degree of government direction to which Blackwater was subjected, we must examine its relationship to the agency it claims to be serving-the Department of the Army.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

## 1. Direction Provided by Contract

Plaintiffs assert that it is a "battlefield contractor." As such, its operations in relation to the Department of the Army are subject to regulation by the Logistics Civil Augmentation Program (LOGCAP). Army Regulation 700-137 (Dec. 16, 1985). LOGCAP provides that "(1) [t]he specific operational boundaries for contractor personnel must be specified within each contract.... (3) The supervisory, administrative, or control relationships between contractors and [Department of the Army] military or civilian personnel will be specified in each contract." *Id.* at §§ 3-2(d)(1), (3). Pursuant to this regulation, the court therefore looks to the contracts that tie Blackwater to the U.S. government.

Blackwater was providing security services (through Regency) to ESS. ESS is in the business of providing catering services and design and build services to the US armed forces in Iraq and required security while operating in the region. This arrangement was made through two separate, but substantially similar contracts that have terms often using identical language. Exhibit E, Defendant's Motion to Dismiss the Complaint Under D.C. Superior Court Rule of Civil Procedure 12(b)(6) for Failure to State a Claim upon which Relief can be Granted (Mar. 20, 2008). Important for the court's purposes are the terms which describe the oversight and decision making power granted to Blackwater.[FN4] Contract section 1.2.1 states that in providing security services to ESS, Blackwater "shall have *complete and absolute control* of the methods and details" of such services. *Id.* (emphasis added). The contract further states that although ESS shall issue instructions regarding the security services, Blackwater "shall, at all times, have *complete authority and responsibility to make decisions* regarding the suitability for movement required by ESS and the type and level of protection required for ESS personnel," based upon factors such as weather and threat levels. Exhibit E at § 1.2.3 (emphasis added). Finally the contract states that Blackwater

> FN4. As such, all references to the contracts will be made to "ESS" as recipient of the services and "Blackwater" as provider of the services.

[S]hall at all times be the *sole judge* of the safety and proprietary of ESS staff, management and workforce personnel movement and Security services, as well as the level and type of Security Services provided. Regency shall be under an *absolute duty at all times to exercise its own reasonable discretion* with respect to safe operations, movement of ESS personnel and the type and level of Security Services provided to ESS; and no direction given by ESS shall be deemed to lessen this duty or in any way to relieve Regency of this responsibility.

Exhibit E at § 1.2.4 (emphasis added). These contracts show that Blackwater retained exclusive control, discretion and responsibility for the services it was providing.

This complete control which Blackwater exercised over its operations is in stark contrast to the specific personnel and equipment requirements imposed by the military in *McMahon*. 410 F. Supp at 1196. Unlike the airline in *McMahon*, Blackwater has no direct contractual relationship with the government. Instead, Blackwater is providing security services, through Regency to ESS, who is merely a private contractor to the government. Not only is Blackwater's relationship to the government more attenuated, but the subject matter of ESS's contract is catering and design and building services, as opposed to Presidential Airways' transportation of ammunition (deemed a great concern of the government). *Id.* at 1196-97.

As opposed to the contractor's subordinate role in *McMahon*, Blackwater's role is more akin to the security service provider in *Guillory*, where the private security service was contracted to providing protection to a federal interest. 872 F. Supp. at 345. A contract established basic parameters within which security service was to be

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

performed and called for general oversight of a federal officer-similar to the general oversight over Blackwater by the theater commander. Exhibit 1 at 9, Plaintiff's Opposition to Defendant's Motion to Dismiss (Apr. 14, 2008). Blackwater not only lacks detailed direction under the contract, but also the general oversight present in *Guillory*. The denial of section 1442 removal in *Guillory* suggests a similar outcome is called for in the present case. 872 F. Supp. at 348.

### 2. Direction by Following Department of State Procedures

An alternate, more indirect form of government direction was addressed by the *Watson* Court. Blackwater agreed in its contracts to follow Department of State procedures regarding Diplomatic Security Services, Rules of Engagement, and Deadly Force Policy, as approved by the U.S. Embassy. *See* Exhibit E at § 1.2.2. Although these policies and procedures have been promulgated and approved by a government agency, compliance with the law does not constitute the close or direct supervision required by section 1442. *Watson,* 127 S. Ct. at 2307.

### IV. Conclusion

This court finds that, as a matter of law, Section 1442 was not available to the plaintiffs as an appropriate grounds for removal. Any injury or damages dependent on successful removal to federal court are consequently unavailable to the Plaintiffs. As such, Judge Retchin did not abuse her discretion in granting the Defendant's Motion to Dismiss on May 27, 2008 because there was available an alternate theory under which the could be dismissed. Accordingly, it is this 29th day of December 2008, hereby

ORDERED that Plaintiffs' Motion for Reconsideration of the Court's May 27, 2008, Order Granting Defendants' Motion to Dismiss is GRANTED; it is further

ORDERED that Defendants' Motion to Dismiss will be treated as a Motion for Summary Judgment; and it is further

ORDERED that the Defendant's Converted Motion for Summary Judgment is GRANTED; it is further

ORDERED that this case is DISMISSED.

<<signature>>

Judge Jennifer M. Anderson

(signed in chambers)

Copies to:

Mark W. Foster, Esq.

Elizabeth G. Taylor, Esq.

Zuckerman Spaeder LLP

1800 M Street, N.W.

Washington, D.C. 20036

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

2008 WL 5520166 (D.C.Super.)

mfoster@zuckerman.com

etaylor@zuckerman.com

*Attorneys for Defendants*

Barry J. Nace, Esq.

Paulson & Nace

1615 New Hampshire Avenue, N.W.

Third Floor

Washington, D.C. 20009

bjn@lawtort.com

*Attorney for Plaintiffs*

Blackwater Sec. Consulting, LLC v. Wiley Rein, LLP
2008 WL 5520166 (D.C.Super. ) (Trial Order )

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.