IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case 5:09-cv-449-BO

R. DANIEL BRADY, ET AL., )
)
Plaintiffs, )
)
vs. )
)
XE SERVICES LLC, )
BLACKWATER SECURITY )
CONSULTING LLC, ET AL., )
)
Defendants. )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY, OR IN THE ALTERNATIVE, FOR AN EXTENSION OF TIME TO RESPOND TO DEFENDANT JEREMY P. RIDGEWAY'S RULE 12(b)(2) MOTION TO DISMISS THE COMPLAINT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................... iii

SUMMARY OF ARGUMENT .................................................. 1

RELEVANT FACTS AND ALLEGATIONS ................................. 2

ARGUMENT ..................................................................... 4

I. PLAINTIFFS SEEK REASONABLE LIMITED JURISDICTIONAL
DISCOVERY .............................................................. 4

    A.    Standard of Review ................................................ 4

    B.    Plaintiffs Have Made A Prima Facie Showing of Grounds for Personal
Jurisdiction, but Request Leave to Discover the Full Nature, Extent, and
Scope of Defendant Ridgeway's Admitted Contacts with the Forum State ..... 5

        (1)    The Frameworks of Analysis ................................... 5

        (2)    The Fact that Defendant Ridgeway's Employment Duties Were
Carried Out in Iraq Does Not Preclude the Constitutional Exercise
of Jurisdiction Over Him in North Carolina ....................... 7

        (3)    Jurisdictional Discovery will likely reveal that Defendant Ridgeway
has had additional contacts with Moyock, North Carolina ........... 10

CONCLUSION ................................................................ 12

# TABLE OF AUTHORITIES

*Base Metal Trading, Ltd. v. OKSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208
(2002) .................................................................. 4

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174 (1985) .......... 5, 6, 7, 8, 12

*Century Data Systems, Inc. v. McDonald,* 109 N.C. App. 425, 428 S.E.2d 190
(1993) ............................................................ 7, 8, 9, 11, 12

*Ciba-Geigy Corp. v. Barnett,* 76 N.C. App. 605, 334 S.E.2d 91 (1985) .................. 8

*Ciena Corp. v. Jarrard,* 203 F.3d 312 (4th Cir. 2000) ............................ 8, 11, 12

*Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977) .............. 5

*Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464
(5th Cir. 1985) .......................................................... 5

*Equifax Services, Inc. v. Hitz,* 905 F.2d 1355 (10th Cir. 1990) .................. 9, 11, 12

*Federal Insurance Co. v. Lake Shore, Inc.,* 886 F.2d 654 (4th Cir.1989) ................ 6

*Hartford Casualty Ins. Co. v. JR Martketing, LLC,* 511 F. Supp. 2d 644 (E.D.V.A. 2007) .... 6

*Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868 (1984) .... 6

*International Shoe Co. v. Washington,* 326 U.S. 310, 66 S. Ct. 154 (1945) ............... 5

*Mylan Labs., Inc. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir.1993) ............................ 4

*Phoenix Am. Corp. v. Brissey,* 46 N.C. App. 527, 265 S.E.2d 476 (1980) ................ 7

*Saudi v. Northrop Grumman,* 427 F.3d 271 (4th Cir. 2005) ........................... 6

*Stann v. Levine,* 180 N.C. App. 1, 636 S.E.2d 214 (2006) ........................... 6, 7

*Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F. 3d 446 (3rd Cir. 2003) ................... 5

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.* 395 F.3d 1275
(C.A.Fed. 2005) ......................................................... 5

*Vishay Intertechnology, Inc., v. Delta Int'l Corp.,* 696 F.2d 1062 (4th Cir. 1982) ............ 5

Pursuant to Local Civil Rule 7.1, EDNC, Plaintiffs, by and through undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion for Leave to Conduct Jurisdictional Discovery, or in the Alternative, for an Extension of Time to Respond to Defendant Jeremy P. Ridgeway's ("Defendant Ridgeway") Rule 12(b)(2) Motion to Dismiss. In support this motion, Plaintiffs show as follows:

## SUMMARY OF ARGUMENT

The instant action arises from the tortious conduct of Defendant Ridgeway and five other individual defendants while employed by a North Carolina-based web of companies that formerly operated under the name "Blackwater" and now operate under the name "Xe" (hereinafter, "Blackwater-Xe"). Although Defendant Ridgeway is a resident of California and the acts complained of occurred in Iraq, Defendant Ridgeway, at all times relevant, maintained a deliberate, ongoing relationship with his employer's Moyock, North Carolina office. Through this relationship, Defendant Ridgeway derived economic benefit and purposefully availed himself of the benefits and protections of the laws of this State.

Not only was Defendant Ridgeway compensated by his North Carolina-based employer for the actions described in the Complaint, but upon information and belief, his tortious acts were committed using weaponry that he was trained to use in North Carolina. Defendant Ridgeway admits that as a condition of his employment with Blackwater-Xe, he was required to complete a two-week "vetting period" in Moyock, North Carolina and further acknowledges numerous additional contacts with the forum state.

Because Plaintiffs have presented factual allegations that suggest, with reasonable particularity, the existence of the requisite contacts between Defendant Ridgeway and the forum state, it is appropriate that this Court grant Plaintiffs leave to conduct limited discovery, as

1

allowed by the Federal Rules of Civil Procedure, to fully determine the nature, extent, and scope of Defendant Ridgeway's contacts with North Carolina. Plaintiffs therefore propose a 90-day period for such limited discovery and pray that the Court allow them an additional twenty (20) days following the close of such discovery to submit their brief in opposition to Defendant Ridgeway's Motion to Dismiss. In the alternative, if this Court does not grant Plaintiffs leave to conduct such discovery, Plaintiffs request the Court to allow them twenty (20) days from the date of such ruling to respond to the brief filed in support of Defendant Ridgeway's Motion to Dismiss. While Defendant Ridgeway's counsel does not consent to Plaintiffs' request to conduct limited jurisdictional discovery, counsel does consent to the requested extension of time.

## RELEVANT FACTS AND ALLEGATIONS

On the early afternoon of September 16, 2007, Defendant Ridgway, along with the five other named individual defendants, were acting within the course and scope of their employment with Blackwater-Xe, when they needlessly shot and killed at least fourteen civilians, seriously injuring a number of others, including several women and children. Compl. ¶¶ 1, 2, 37, 47-48.[1]

Blackwater-Xe's "primary operational facility" and headquarters is, and was at all times relevant, located in Moyock, North Carolina. Compl. ¶50; Ridgeway Dec. ¶ 9, 12, 17. Blackwater-Xe has described this facility, which spans approximately 6,000 acres, as the largest such facility in the United States. Compl. ¶ 50. Xe Services LLC, the alleged entity that directly employed Defendant Ridgeway (see Ridgeway Dec. ¶ 4), maintains a registered agent in North Carolina and is one of the numerous entities comprising Blackwater-Xe. Compl. ¶¶ 20, 37-38. Plaintiffs are informed and believe that the Blackwater-Xe entities are all operated as a single company and that the 6,000 acre facility located in Moyock, North Carolina functions as the

---

[1] References to Plaintiffs' Complaint will be referred to as "Comp.,¶__." References to the Declaration of Jeremy P. Ridgeway In Support of His Motion To Dismiss filed on December 24, 2009 will be referred to as "Ridgeway Dec. ¶__."

2

"primary operational facility" for all of the entities comprising Blackwater-Xe, including Xe Services LLC. *Id.* ¶¶ 20, 37-38, 50.

Although the events described in the Complaint occurred in Iraq, at all times relevant, Defendant Ridgeway maintained an ongoing relationship with Blackwater-Xe's headquarters in Moyock. Pursuant to the terms of the service contract awarded by the United States State Department ("DOS") to Blackwater-Xe in 2006, known as the WPPS II contract (hereinafter "WPPS II"), North Carolina-based Blackwater-Xe was required to recruit, screen, select, train and compensate all Blackwater-Xe employees, including the Defendant Ridgeway. *Id.* ¶¶ 55-60. Plaintiffs are informed and believe that such activities occurred in Moyock. In fact, Defendant Ridgeway admits that in 2006, he participated in what he describes as a "two-week vetting period" or job interview conducted by Blackwater-Xe at its Moyock, North Carolina facility. Ridgeway Dec. ¶¶ 12-13. Ridgeway was paid for the training sessions he attended in North Carolina, and his attendance of such training sessions were prerequisites to his obtaining a field position in Iraq and reimbursement for travel expenses. *Id.* ¶¶ 12-13.[2]

In addition to recruiting, screening, and training Defendant Ridgeway, Blackwater-Xe's Moyock facility coordinated Defendant Ridgeway's field operations and provided substantial assistance to his "in-country" leadership team in Iraq. Specifically, in connection with Blackwater-Xe's award of the WPPS II contract, Blackwater-Xe submitted a "Task Order Proposal" to the DOS.[3] Ex A. The Task Order Proposal outlines Blackwater-Xe's operational structure in Iraq, referring to Blackwater-Xe's Moyock facility as the "Blackwater Operations

---

[2] In his Declaration to this Court, Defendant Ridgeway even goes so far as stating, "Had I not successfully completed this two-week vetting period [in Moyock], I would have not been hired by Blackwater." Ridgeway Dec. ¶ 14.

[3] Based on this Task Order Proposal, the DOS issued Blackwater-Xe WPPS Task Order 6, which is the task order Defendant Ridgeway references in his Declaration to this Court. See Ridgeway Dec. ¶ 9. A copy of a portion of the 2006 Task Order Proposal is attached hereto as Exhibit A. Because discovery has yet to occur in this case, Plaintiffs make use of documents filed in other related cases which were obtained from PACER.

3

Center." Ex. A, p. 7. As part of Blackwater-Xe's "nimble" corporate structure, the Regional Coordinator, located at the Moyock facility was to "provide rapid response to the teams in Baghdad, Iraq." Ex. A, p. 9. In order to support Blackwater-Xe's operations in Iraq, the Regional Coordinator maintained "immediate access to in-country and in-theater partners as well as domestic suppliers and contractors." Ex. A., p 9. Blackwater-Xe further represented that any "[i]ssues or concerns that [could not] be addressed by the in-country project manager [would be] elevated to the Blackwater Operations Center in Moyock, North Carolina." Ex. A, p. 7.

Plaintiffs are also informed and believe that during the time that Defendant Ridgeway was operating in Iraq, North Carolina-based Blackwater-Xe was required to evaluate and discipline Defendant Ridgeway and to provide Defendant Ridgeway with a salary and workers' compensation benefits. Compl. ¶ 55-60. Defendant Ridgeway likewise admits making multiple phone calls and participating in numerous e-mail exchanges with representatives at Blackwater-Xe's Moyock office in late 2007 in order to process a claim on his disability insurance, stemming from injuries sustained during his employment with Blackwater-Xe. Ridgeway Dec. ¶ 17. Defendant Ridgeway's disability insurance policy was administered through Blackwater-Xe's North Carolina office. Ridgeway Dec. ¶ 17; *see also* Memorandum in Support of Defendant Jeremy P. Ridgeway's Motion to Dismiss filed Dec. 24, 2009, p. 2 ("Ridgeway MOL").[4]

## ARGUMENT

### I. PLAINTIFFS SEEK REASONABLE LIMITED JURSIDCITIONAL DISCOVERY

#### A. Standard of Review.

When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the Court, with the burden on the plaintiff ultimately to prove

---

[4] In the Ridgeway MOL, defendant Ridgeway cites to paragraph 17 of his Declaration for the proposition that his disability insurance carrier is based in Illinois; however, there is no such supporting affirmation contained therein.

grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir.1993). Although the decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the Court, *see Base Metal Trading, Ltd. v. OKSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 216, n. 3 (2002), "if a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F. 3d 446, 456, (3rd Cir. 2003) (citations omitted.); *accord Trintec Industries, Inc. v. Pedre Promotional Products, Inc.* 395 F.3d 1275, 1283 (C.A.Fed. 2005) (holding that jurisdictional discovery was appropriate where the existing record was "inadequate" to support personal jurisdiction, but a party had "demonstrate[ed] that it [could] supplement its jurisdictional allegations through discovery."); *Enterprise Intern., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 475 (5th Cir. 1985) ("[t]he district court correctly decided that the record does not permit it to decide whether it has jurisdiction over [the defendant] and ordered further discovery to enable the essential facts to be determined.").

**B.     Plaintiffs Have Made A Prima Facie Showing of Grounds for Personal Jurisdiction, but Request Leave to Discover the Full Nature, Extent, and Scope of Defendant Ridgeway's Admitted Contacts with the Forum State.**

**(1)     The Frameworks of Analysis.**

As Defendant Ridgeway correctly states in his brief, North Carolina's long-arm statute extends personal jurisdiction to the limits allowed by due process. *Vishay Intertechnology, Inc., v. Delta Int'l Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982) (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629, 630 (1977)). It is well-established that a court's exercise of personal jurisdiction comports with the limits of due process when the defendant purposefully

establishes certain "minimum contacts" in the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). The requisite level of contacts a defendant must have with a forum state to satisfy this due process requirement, however, is dependant on whether the litigation arises out of or relates to the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-473, 105 S.Ct. 2174, 2182 (1985) (quotations and citations omitted).

If a defendant is domiciled in a state or has had "continuous and systematic" contacts with the forum state, a court may exercise "general jurisdiction" over the defendant, irrespective of whether the litigation arises from or relates to the defendant's contacts with the forum state. *Saudi v. Northrop Grumman*, 427 F.3d 271, 276 (4th Cir. 2005). However, where the litigation is related to the defendant's contacts with the forum, a court may exercise specific jurisdiction over the defendant, even where the plaintiff has not shown as great of a degree of contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, n. 8-9 (1984).

The Supreme Court has prescribed a three-prong test to determine whether specific jurisdiction exits: (1) the nonresident defendant must do something by which he purposefully avails himself of the privilege of conducting activities in the forum and thus, invokes the benefits and protections of its laws; (2) the claim must be related to or arise from those forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Burger King Corp., supra; Federal Insurance Co. v. Lake Shore, Inc.*, 886 F.2d 654, 660 (4th Cir.1989). For purposes of the first prong of the analysis, North Carolina courts typically examine the following factors in determining whether minimum contacts exist: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action to the contacts; (4)

the interest of the forum state; and (5) the convenience to the parties. *See, e.g., Stann v. Levine*, 180 N.C. App. 1, 28, 636 S.E.2d 214, 230 (2006); *see also Hartford Casualty Ins. Co. v. JR Martketing, LLC*, 511 F. Supp. 2d 644, 649 (E.D.V.A. 2007) (discussing the framework for the specific jurisdiction analysis and noting that the first prong asks whether minimum contacts exist). These factors are not to be applied mechanically, but rather, the Court must weigh the factors and determine what is fair and reasonable to both parties. *See Phoenix Am. Corp. v. Brissey*, 46 N.C. App. 527, 531, 265 S.E.2d 476, 479 (1980).

### (2) The Fact that Defendant Ridgeway's Employment Duties Were Carried Out in Iraq Does Not Preclude the Constitutional Exercise of Jurisdiction Over Him In North Carolina.

Defendant Ridgeway argues throughout his brief that because his employment duties were carried out in Iraq and his contacts with the state of North Carolina have allegedly been somewhat sporadic in nature, his forum contacts are therefore insufficient to support this Court's exercise of either specific jurisdiction or general jurisdiction over him. This argument, however, is inconsistent with North Carolina law.

While it is true under North Carolina law that a defendant's contacts with a forum state must be more than "random, fortuitous, or attenuated" to support the exercise of specific jurisdiction, contacts that are "isolated" or "sporadic" may nonetheless support specific jurisdiction if they create a "substantial connection" with the forum. *Stann*, 180 N.C. App. at 28, 636 S.E.2d at 230 (internal quotations and citations omitted) (*quoting Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183).

Likewise, North Carolina courts have found general jurisdiction to exist under substantially analogous facts. In *Century Data Systems, Inc. v. McDonald*, 109 N.C. App. 425, 428 S.E.2d 190 (1993), the plaintiff, a software company with offices in North Carolina, filed

7

suit in North Carolina against four former employees, all of whom were South Carolina residents at the time they entered into their employment contracts and all of whom were employed by the plaintiff to work exclusively in South Carolina. Most significantly, the record established that the forum contacts of one of the defendant-employees, Defendant Barker, were limited to his attendance of two five-day sessions of programming school sponsored by the plaintiff in North Carolina, his receipt of bi-weekly payroll, which was processed out of the plaintiff's North Carolina office, and his execution of his employment contract in the state of North Carolina. *Id.* at 431, 428 S.E.2d at 193.

In *Century Data,* the defendant employees argued that since their employment contracts did not require them to perform services in North Carolina, they lacked the requisite contacts with North Carolina for the court to exercise jurisdiction over them consistent with due process. *Id.* at 429-35, 428 S.E.2d at 192-195. The North Carolina Court of Appeals, however, rejected their arguments, concluding that "'[i]n light of the modern business practices, the quantity, or even the absence of actual physical contacts with the forum state, merely constitutes a factor to be considered and is not of controlling weight.'" *Century Data,* 109 N.C. App. at 433, 428 S.E.2d at 194 (quoting *Ciba-Geigy Corp. v. Barnett,* 76 N.C. App. 605, 607-08, 334 S.E.2d 91, 93 (1985)); *see also Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183.

In reaching its conclusion in *Century Data,* the Court reasoned that the defendant-employees had an ongoing relationship with the plaintiff's North Carolina offices, as they relied on those offices for training, meetings, issuance of pay checks, receipt of purchase orders and shipment of goods. *Century Data,* 109 N.C. App. at 433, 428 S.E.2d at 194. The Court further concluded that it was fair that they be haled into a North Carolina court, as their employment contracts contained provisions stating that such contracts would be "construed and interpreted

under the Law of the State of North Carolina." *Id.* at 434, 428 S.E.2d at 194-95; *accord Ciena Corp. v. Jarrard*, 203 F.3d 312, 315-18 (4th Cir. 2000) (holding that due process permitted the exercise of personal jurisdiction in Maryland over a former employee of a Delaware-based fiber optics company who worked exclusively out of Kansas City, Missouri, where the former employee attended training sessions and meetings at the company's headquarters in Maryland and many of the events and facts central to the case concerned the employee's job responsibilities, training, and knowledge of trade secrets which were acquired in Maryland); *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355 (10th Cir. 1990) (holding that due process permitted the exercise of personal jurisdiction in Kansas over an employee who worked exclusively in California and had only traveled to Kansas twice—once to attend an employer-mandated training session and once when he was summoned to his employer's headquarters for a reprimand shortly before he resigned).

In the instant matter, Plaintiffs have alleged facts analogous in all significant respects to the facts of *Century Data*, *Ciena Corp.*, and *Equifax Services*. The facts, as alleged, show that during the events that give rise to this dispute, Defendant Ridgway was employed by and was acting for the benefit of a North Carolina-based "web of companies" that operated collectively, as a single company with a primary operational facility located in Moyock, North Carolina. Compl. ¶2, 37-48, 47-48, 50; Ridgeway Dec. ¶¶ 9, 12, 17.

Plaintiffs have further alleged that while Defendant Ridgeway was working remotely on behalf of Blackwater-Xe in Iraq, the individual defendants, including Defendant Ridgeway, maintained an ongoing relationship with Blackwater-Xe headquarters. Compl. ¶¶ 51, 53-60. Specifically, Plaintiffs have alleged that while Defendant Ridgeway operated in Iraq, North Carolina-based Blackwater-Xe maintained the duty to recruit, screen, select, train, evaluate, and

discipline Defendant Ridgeway. Compl. ¶¶ 55-60. Moreover, Plaintiffs alleged that Blackwater-Xe "paid travel expenses for those employees hired to provide private personal protective services, including the costs of taxis, hotels and airfare[;]" "determined the job assignments, work schedules and work rotations for its employees," including Defendant Ridgeway; and provided its employees, including Defendant Ridgeway, with salaries and workers' compensation benefits. Compl. ¶ 57, 58, 59.

Furthermore, the events and facts central to this case concern Defendant Ridgeway's carrying out of employment responsibilities on behalf of North Carolina-based Blackwater-Xe, including (1) Defendant Ridgeway's failure to act in accordance with the policies and procedures taught to him in North Carolina at Blackwater-Xe's North Carolina headquarter office; and (2) Blackwater-Xe's headquarter office's failure to supervise and discipline Defendant Ridgeway while he was acting on their behalf in Iraq. *See, e.g.,* Compl. ¶¶ 71-78, 107, 108, 109, 112, 132, 144, 150.

Not only was the tortious conduct described in the Complaint presumably carried out by Defendant Ridgeway using weaponry that he was trained to use at Blackwater-Xe's training facility in North Carolina, but Defendant Ridgeway likewise admits that his activities in Iraq would not have occurred but-for his contact with North Carolina, since the two-week "vetting period" was a prerequisite to his employment in Iraq. He also acknowledges numerous phone calls and e-mails to and from the forum state concerning a claim on the disability insurance policy administered by his employer out of the forum state. In light of the numerous forum contacts alleged in the Complaint and admitted by Defendant Ridgeway in his Declaration to this Court, Plaintiffs have stated, with reasonable particularity, the existence of requisite contacts

between Defendant Ridgeway and the forum state to satisfy the standards of due process articulated in *Century Data*, *Ciena Corp.*, and *Equifax Services*.

### (3) Jurisdictional Discovery will likely reveal that Defendant Ridgeway has had additional contacts with Moyock, North Carolina.

In order to determine the full nature, extent, and scope of Defendant Ridgeway's contacts with North Carolina, Plaintiffs should be allowed leave to conduct discovery on this issue.

Plaintiffs submit that it is certainly no coincidence that Defendant Ridgeway's disability insurance claim was processed out of Blackwater-Xe's Moyock, North Carolina office. Defendant Ridgeway's admission that his disability claim was processed and administered out of the Moyock North Carolina office lends further credence to Plaintiffs' allegations that the Moyock facility serves as headquarters for all of the Blackwater-Xe entities. As such, there is a reasonable basis to believe that Defendant Ridgeway's payroll and other employee benefits, including workers' compensation insurance, would have been regularly and systematically processed out of Blackwater-Xe's Moyock office as well.[5]

Likewise, Defendant Ridgeway's testimony that he was required to participate in a "two-week job interview" at Blackwater-Xe's Moyock office makes it likely that Defendant Ridgeway would have submitted an employment application to the Moyock office, and upon the conclusions of his vetting period, may have also executed his employment contract and other hiring paperwork there as well.

In addition, Plaintiffs are informed and believe that the boilerplate employment contracts utilized by Blackwater-Xe in employing the individual defendants, including Defendant Ridgeway, contain choice of law and forum selection provisions requiring that disputes arising

---

[5] Like Defendant Ridgeway, each of the other named individual defendants, Ball, Heard, Liberty, Slatten, and Slough, are also nonresident defendants. While these defendants filed a joint Motion to Dismiss on November 12, 2009 pursuant to Rules 12(b)(1) and 12(b)(6), F.R. Civ. P., it is significant to note that none of these defendants raised any defense under Rule 12(b)(2) based upon lack of personal jurisdiction.

out of the agreement would be governed by North Carolina law and resolved in North Carolina. See Exhibit B, ¶ 20.1.[6]

These potential contacts would constitute additional evidence of Defendant Ridgeway's deliberate affiliation with the forum state and further support the exercise of personal jurisdiction over him consistent with the limits of "fair play and substantial justice." *See Burger King*, 471 U.S. at 479-81. 105 S.Ct. at 2185-87. As set forth above, because Plaintiffs have already stated, with reasonable particularity, the existence of requisite contacts between Defendant Ridgeway and the forum state sufficient to satisfy the standards articulated in *Century Data*, *Ciena Corp.*, and *Equifax Services*, and there is a reasonable basis to believe that jurisdictional discovery will reveal that Defendant Ridgeway has had additional contact with the forum state, it is proper that Plaintiffs be allowed to conduct limited discovery on this issue to supplement the record.

## CONCLUSION

For the foregoing reasons, Plaintiffs pray that the Court grant them a 90-day period to conduct limited jurisdictional discovery, with an additional twenty (20) days following the close of such discovery to submit their brief in opposition to Defendant Ridgeway's Motion to Dismiss. In the alternative, if this Court does not grant Plaintiffs leave to conduct such discovery, Plaintiffs request the Court to allow Plaintiffs twenty (20) days from the date of such ruling to respond to the brief filed in support of Defendant Ridgeway's Motion to Dismiss.

[signature page follows]

---

[6] Attached as Exhibit B is an employment contract used by Blackwater Security Consulting, LLC, an affiliate of Xe Services LLC, which also employed individuals to perform private protective services in Iraq on behalf of Blackwater-Xe. Discovery will further reveal whether Defendant Ridgeway's employment contract contained provisions similar to those set forth in ¶ 20.1 of Exhibit A.

This, the 25th day of January, 2010.

/s/ James A. Roberts, III
James A. Roberts, III
N. C. State Bar No. 10495
jimroberts@lewis-roberts.com
Brooke N. Albert
N.C. State Bar No. 36584
brookealbert@lewis-roberts.com

**LEWIS & ROBERTS, PLLC**
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Telephone:   919-981-0191
Facsimile:   919-981-0199

/s/ Paul R. Dickinson, Jr.
Paul R. Dickinson, Jr.
N.C. Bar No. 20510
pauldickinson@lewis-roberts.com
Gary V. Mauney
N.C. Bar No. 22190
garymauney@lewis-roberts.com

**LEWIS & ROBERTS, PLLC**
5960 Fairview Road, Suite 102
Charlotte, NC 28210
Telephone:   704-347-8990
Facsimile:   704-347-8929

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2010, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Eric H. Cottrell
ecottrell@mayerbrown.com
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, NC 28202
*Attorneys for Defendants Xe Services, LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd. and Erik Prince*

Keith Harrison Johnson
kjohnson@poynerspruill.com
POYNER SPRUILL LLP
P. O. Box 1810
301 Fayetteville St., Suite 1900
Raleigh, NC 27602-1801
*Attorneys for Defendants Donald Wayne Ball, Dustin L. Heard, Evan Shawn Liberty, Nicholas Abram Slatten, and Paul Alvin Slough*

Edward H. Maginnis
emaginnis@maginnislaw.com
MAGINNIS LAW
6030 Creedmoor Road, Suite 200
Raleigh, NC 27612
*Attorneys for Defendant Jeremy P. Ridgeway*

/s/ James A. Roberts, III
James A. Roberts, III
N. C. State Bar No. 10495
jimroberts@lewis-roberts.com
Brooke N. Albert
N.C. State Bar No. 36584
brookealbert@lewis-roberts.com

**LEWIS & ROBERTS, PLLC**
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Telephone: 919-981-0191
Facsimile: 919-981-0199