# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| R. DANIEL BRADY ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 5:09-CV-00449-BO |
| v. | ) |
| | ) |
| XE SERVICES LLC ET AL., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**CORPORATE DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE EXHIBITS**

Eric H. Cottrell (N.C. Bar No. 21994)
ecottrell@mayerbrown.com
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, North Carolina 28202
(704) 444-3500
(704) 377-2033 (fax)

Andrew J. Pincus
apincus@mayerbrown.com
Michael E. Lackey, Jr.
mlackey@mayerbrown.com
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
(202) 263-3300 (fax)

Peter H. White
peter.white@srz.com
SCHULTE ROTH & ZABEL LLP
1152 15th Street NW, Suite 850
Washington, DC 20005
(202) 729-7470
(202) 730-4520 (fax)

*Attorneys for Defendants Xe Services LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd. and Erik Prince*

## TABLE OF CONTENTS

          **Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    PLAINTIFFS' CLAIMS CANNOT BE MAINTAINED IN THIS COURT .......................1

     A.    Plaintiffs Lack Standing.............................................................................................1

     B.    The Foreign Affairs Preemption Doctrine Bars Plaintiffs' Claims ..........................3

     C.    Plaintiffs' Claims Present Nonjusticiable Political Questions.................................4

     D.    Plaintiffs' Claims Are Barred By The Government Contractor Defense
          And By Absolute Immunity......................................................................................6

II.   PLAINTIFFS' CLAIMS CANNOT BE MAINTAINED UNDER IRAQI LAW...............7

     A.    CPA Order 17 Bars Plaintiffs' Claims......................................................................7

     B.    Iraqi Law Does Not Allow Vicarious Liability For Corporate Defendants.............8

     C.    Punitive Damages Are Not Available Under Iraqi Law .........................................9

III.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST ANY OF THE
      CORPORATE DEFENDANTS......................................................................................9

IV.  THE EXHIBITS TO THE COMPLAINT SHOULD BE STRICKEN ............................10

CONCLUSION................................................................................................................................10

# TABLE OF AUTHORITIES

**Cases** Page(s)

*Ashcroft v. Iqbal*,
 129 S. Ct. 1937 (2009) ................................................................................................10

*Bancoult v. McNamara*,
 445 F.3d 427 (D.C. Cir. 2006) ................................................................................4, 5

*Berlin Democratic Club v. Rumsfeld*,
 410 F. Supp. 144 (D.D.C. 1976) .............................................................................1, 2

*Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th Cir. 2009) .....................4

*Clark v. Takata Corp.*,
 192 F.3d 750 (7th Cir. 1999) ........................................................................................8

*Constructores Civiles de Centroamerica, S.A. v. Hannah*,
 459 F.2d 1183 (D.C. Cir. 1972) ...................................................................................2

*Cooper v. Smith & Nephew, Inc.*,
 259 F.3d 194 (4th Cir. 2001) ........................................................................................8

*Doe VIII v. Exxon Mobil Corp.*,
 658 F. Supp. 2d 131 (D.D.C. 2009) .............................................................................1

*Edgar v. MITE Corp.*,
 457 U.S. 624 (1982) .....................................................................................................7

*Glenn v. Wagner*,
 313 N.C. 450, 329 S.E.2d 326 (1985) ....................................................................9, 10

*Haig v. Agee*,
 453 U.S. 280 (1981) .....................................................................................................4

*Harbury v. Hayden*,
 522 F.3d 413 (D.C. Cir. 2008) .....................................................................................5

*Harris v. Thompson Contractors, Inc.*,
 148 N.C. App. 472, 558 S.E.2d 894 (2002) .................................................................7

*Maine Ass'n of Interdependent Neighborhoods, Inc. v. Petit*,
 644 F. Supp. 81 (D. Me. 1986) ....................................................................................3

*Rowe v Hoffman-La Roche, Inc.*,
 917 A.2d 767 (N.J. 2007) .............................................................................................7

*Russian Volunteer Fleet v. United States*,
  282 U.S. 481 (1931) ............................................................................................................. 2

*Saleh v. Titan Corp.*,
  580 F.3d 1 (D.C. Cir. 2009) ............................................................................................. 3, 4

*In re Scarborough*,
  135 S.E.2d 529 (N.C. 1964) ................................................................................................ 2

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ............................................................................................. 6

*The Disconto Gesellschaft v. Umbreit*,
  208 U.S. 570 (1908) ............................................................................................................. 2

*TWI v. CACI Int'l, Inc.*,
  No. 1:07-cv-908, 2007 WL 3376661 (E.D. Va. Nov. 9, 2007) ......................................... 7

*Wegner v. Delly-Land Delicatessen, Inc.*,
  270 N.C. 62, 153 S.E.2d 804 (1967) .................................................................................. 7

*In re Xe Servs. Alien Tort Litig.*, Nos. 1:09-cv-615, 616, 617, 618, 645, 2009 WL
  3415129, at *23 n.40 (E.D. Va. Oct. 21 2009) ................................................................. 4

**Statutes, Rules and Regulations**

15 U.S.C. § 78bb(f)(2) ............................................................................................................ 3

28 U.S.C. § 1453 ..................................................................................................................... 3

Fed. R. Civ. P. 8 ................................................................................................................. 9, 10

**Other Authorities**

Moshe Schwartz, *The Department of Defense's Use of Private Security Contractors in
  Iraq and Afghanistan*, Cong. Research Service Report No. R40835 (Jan. 19, 2010),
  http://www.fas.org/sgp/crs/natsec/R40835.pdf ................................................................. 5

Wright & Miller, 13B Federal Practice & Procedure § 3531.14 ......................................... 3

Plaintiffs' opposition to the Corporate Defendants' motion to dismiss ("Opp.") describes an event that was undeniably tragic. Every tragic event that occurs throughout the world is not redressable through a lawsuit in the courts of the United States, however. The issue presented by this motion is whether the Complaint states a valid claim for relief against the Corporate Defendants. For all of the reasons stated herein and in the opening brief ("Mem."), it does not.

## I. PLAINTIFFS' CLAIMS CANNOT BE MAINTAINED IN THIS COURT.

Plaintiffs are Iraqi citizens seeking compensation under Iraqi law for injuries allegedly sustained in the Iraq war zone at the hands of U.S. State Department contractors providing security services to U.S. diplomats. Such injuries are not redressable in this Court.

### A. Plaintiffs Lack Standing.

Plaintiffs do not dispute that there is a general, prudential "rule that non-resident aliens have no standing to sue in United States courts." *Doe VIII v. Exxon Mobil Corp.*, 658 F. Supp. 2d 131, 134 (D.D.C. 2009) (quoting *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 152 (D.D.C. 1976)). Like the plaintiffs in *Doe VIII*, they are "unable to cite to a single case that is contrary to *Berlin Democratic Club*." *Id.* That is not surprising: *Berlin Democratic Club* rests upon the established principle that federal courts should not extend their jurisdiction extraterritorially to claims by non-resident plaintiffs arising outside the United States, absent one of the links to the United States identified in that opinion. Plaintiffs' efforts to shoehorn their claims—which they admit arise under Iraqi law (*see* Opp. 23; *infra* p. 7 n.6)—into those narrow exceptions are unavailing.[1]

---

[1] Plaintiffs also assert that this case does not implicate the prudential bar on standing because they are not "enemies of this country." Opp. 16. But in neither *Doe VIII* nor *Berlin Democratic Club* were the plaintiffs foreign "enemies." In *Doe VIII*, they were Indonesian citizens suing an American oil company for injuries caused by Indonesian soldiers hired to provide security in Indonesia. 658 F. Supp. 2d at 132-33. In *Berlin Democratic Club*, the plaintiff was an Austrian citizen claiming injuries by U.S. Army personnel overseas. 410 F. Supp. at 152.

First, they claim standing because this suit involves a *res* in the United States—namely, "the right of action for wrongful death." Opp. 17-18. This fundamentally misconstrues the *res* exception, which applies only "where the court has a *res* within its jurisdiction." *Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183, 1190 (D.C. Cir. 1972); *see also Berlin*, 410 F. Supp. at 152. The principal examples are *The Disconto Gesellschaft v. Umbreit*, 208 U.S. 570 (1908), in which the court "had jurisdiction over assets of an insolvent debtor which it refused to allow the foreign claimant to remove," and *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931), which "permitted a foreign corporation to challenge governmental action where contracts for ships under construction in American yards were within the court's jurisdiction." *Constructores Civiles*, 459 F.2d at 1190. Plainly, the *res* exception requires that the *subject of the dispute* is property within the court's jurisdiction, which is not the case here. Were *the action itself* treated as the *res*, the court would, by definition, have a *res* within its jurisdiction as soon as a suit were filed, and the exception would swallow the rule.[2]

Next, Plaintiffs invoke *Berlin Democratic Club*'s exception for suits under statutory schemes allowing non-resident aliens to sue. Opp. 18-19. This exception applies only "where *a specific statutory scheme* permits suits by non-resident aliens *for injuries suffered under the statute*." 410 F. Supp. at 152 (emphasis added). Plaintiffs do not identify a single federal statute giving rise to their claims that confers standing in this Court. *Cf. Constructores Civiles*, 459 F.2d at 1190 (non-resident alien had standing to sue under federal Administrative Procedure Act).

---

[2] The case on which Plaintiffs rely, *In re Scarborough*, 135 S.E.2d 529 (N.C. 1964), was a dispute over where an administrator should be appointed to pursue a claim on behalf of an estate. The court concluded that "[t]he asset (right of action for wrongful death) has a situs in the county in which personal service can be had on the tort-feasor." *Id.* at 531. This case, in contrast, is not a dispute over the *situs* of a wrongful death claim, but rather a suit for damages for alleged wrongful death, which, as *Scarborough* notes, is an action *in personam*, not *in rem*. *See id.*

2

Indeed, Plaintiffs have expressly disavowed reliance on federal law. Opp. 1 ("There are no federal claims or causes of action raised in the Complaint.").

Plaintiffs instead cite North Carolina cases holding that non-resident aliens can sue in North Carolina's courts. But Plaintiffs do not purport to bring any claims arising under the laws of North Carolina. The suggestion that a *state's* general policy of opening its courts to non-resident aliens can confer standing on such plaintiffs in *federal court* to sue under the laws of a *foreign state* ignores the settled principle that state standing rules do not apply in federal court and, again, would let the exception swallow the rule. *See* Wright & Miller, 13B Federal Practice & Procedure § 3531.14 n.34 ("standing to sue a federal agency should be controlled by federal law, preempting state law").[3]

### B. The Foreign Affairs Preemption Doctrine Bars Plaintiffs' Claims.

Plaintiffs offer no substantial response to Defendants' argument that the federal government's paramount interests in wartime policymaking preempt "the imposition of a non-federal tort duty" in a foreign war zone. *Saleh v. Titan Corp.*, 580 F.3d 1, 7 (D.C. Cir. 2009); Mem. 15-18. *First*, they assert, without elaboration, that this case does not involve "war-time policymaking" or "military concerns." Opp. 22 n.11. But it is undisputed that when the alleged events took place, the Defendants were performing diplomatic security functions—they were attempting to secure a safe exit route for U.S. diplomats who had just been attacked by a car bomb—that the government otherwise would have assigned to U.S. military personnel. Thus, Defendants' very employment reflects a sensitive wartime policymaking judgment about how to

---

[3] Plaintiffs say that their standing "may not be abridged" by removal. Opp. 18. But a defendant properly invoking federal officer removal is not "bound to litigate in state court a claim which the plaintiff would have no standing to bring in federal court." *Maine Ass'n of Interdependent Neighborhoods, Inc. v. Petit*, 644 F. Supp. 81, 84 (D. Me. 1986). Indeed, actions that might survive in state court frequently are assessed under federal standards once they are removed; that is precisely the goal of the removal provisions of statutes like the Class Action Fairness Act (28 U.S.C. § 1453) and the Securities Litigation Uniform Standards Act (15 U.S.C. § 78bb(f)(2)).

ensure the safety of U.S. diplomats traveling in Iraq; so too do the detailed standards governing the ICs' security missions. *Second*, Plaintiffs assert that *Saleh* is inapplicable because Defendants were not integrated into the military's "combatant activities." Opp. 22 n.11, 27 n.18. Defendants are not, however, invoking the combatant activities preemption holding of *Saleh*, but rather its "alternative" holding on foreign affairs preemption, which applies "even in the absence of" combatant activities. 580 F.3d at 11-13; Mem. 14-18.

### C. Plaintiffs' Claims Present Nonjusticiable Political Questions.

Plaintiffs advance a cramped view of the political question doctrine under which only battlefield military decisions implicate nonjusticiable political questions. Opp. 19-23. To that end, Plaintiffs emphasize that Defendants were not employed by the Department of Defense, citing certain individual defendants' statement that they were employed "pursuant to a ***Department of State*** contract to support the ***Department of State's*** mission in Iraq," which was "to [c]reate a more secure, democratic, and prosperous world for the benefit of the American people and the international community." *Id.* at 12 (emphasis and alteration in original; internal quotation marks omitted). However, activities undertaken on behalf of the Department of State ("DoS")—no less than military activities—are a "quintessential source[] of political questions." *Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006), *cert. denied*, 549 U.S. 1166 (2007); *see also Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").[4]

---

[4] Plaintiffs' suggestion that the dismissal in *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271 (11th Cir. 2009), rested solely on the fact that military decisions were implicated is incorrect. The court found that extensive regulation of the contractor superseded the standard of care "used in ordinary tort cases" and that the "dangerousness of the circumstances" displaced ordinary principles of duty and breach, leaving "no judicially discoverable and manageable standards for resolving the questions presented by the case." *Id.* at 1288-89. If the Court finds the record in this case insufficient to make the same determination, the appropriate course is to reevaluate the political question issue "upon further development of the record." *In re Xe Servs.*

4

Plaintiffs do not dispute that Defendants' employment was the result of sensitive judgments by DoS about how best to advance its mission of creating a stable and democratic Iraq. *See* Moshe Schwartz, *The Department of Defense's Use of Private Security Contractors in Iraq and Afghanistan*, Cong. Research Service Report No. R40835, at 5 (Jan. 19, 2010), http://www.fas.org/sgp/crs/natsec/R40835.pdf ("According to government officials, … the Department of State would be unable to execute [its] mission[] in Iraq … without the support of private security contractors."). As Plaintiffs allege, the ICs' conduct in Nisoor Square was undertaken "pursuant to a Department of State contract to support the Department of State's mission in Iraq" and governed "by the use-of-force policies set forth in the State Department Mission Firearms Policy for Iraq." Opp. 12, 13 (quotation marks and emphases omitted).

The Mission Firearms Policy and the WPPS II contract provide detailed rules and procedures for security contractors carrying out DoS's mission that reflect DoS's balancing of the need to protect U.S. diplomats against the risk of injuries to Iraqi civilians. Plaintiffs' claims call into question whether Defendants complied with DoS's policies and, if so, whether those policies adequately protected the Iraqi civilian population—both of which involve judgments exclusively within the competence of the Executive Branch. The Constitution "precludes judges from overseeing" the implementation of foreign policy decisions by the political branches. *Bancoult*, 445 F.3d at 433 (citation and internal quotation marks omitted) (finding political question where "specific tactical measures allegedly taken" were "inextricably intertwined" with foreign policy questions); *see also Harbury v. Hayden*, 522 F.3d 413, 420 (D.C. Cir.), *cert. denied*, 129 S. Ct. 195 (2008) (finding political question where "cases sought determinations whether the alleged conduct *should* have occurred, which impermissibly would require

---

*Alien Tort Litig.*, Nos. 1:09-cv-615, 616, 617, 618, 645, 2009 WL 3415129, at *23 n.40 (E.D. Va. Oct. 21 2009).

examining the wisdom of the underlying policies"). This includes evaluating compliance with internal DoS policies and directives: neither DoS policies on the use of force nor the instructions of the RSO overseeing the September 16, 2007 mission supplies "judicially discoverable and manageable standards" for resolution of Plaintiffs' claims. *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005). Simply "recasting foreign policy and national security questions in tort terms does not provide standards for making or reviewing foreign policy judgments." *Id.* at 197.

### D. Plaintiffs' Claims Are Barred By The Government Contractor Defense And By Absolute Immunity.

Plaintiffs' argument against the application of the government contractor defense is essentially that the ICs were not authorized to "shoot civilians at Nisur Square" (Opp. 26), and therefore not entitled to immunity under *Boyle*. This misses the crux of the Corporate Defendants' argument, which is that *their* conduct satisfied all elements of *Boyle*. Plaintiffs do not dispute that USTC's conduct, including its hiring, training, retention, and supervision of ICs, was all undertaken in accordance with the detailed specifications of the WPPS II contract, and therefore the direct-liability claims against the Corporate Defendants (Counts 7 and 8) are barred by *Boyle*. *See* Mem. 21-23. Moreover, as to the ICs' conduct, Plaintiffs fail to substantiate their assertion that it was outside the scope of their DoS employment, as explained *infra* (p. 7 n. 5).

In addition, Plaintiffs' claims are barred by derivative absolute immunity. Plaintiffs' conclusory assertions to the contrary notwithstanding, Defendants satisfy every element of the *Mangold* test. *First*, Defendants plainly were performing delegated actions in the government's stead: the WPPS II contract explicitly recited that "[DoS] is unable to provide protective services on a long-term basis from its pool of [employees], [and] thus *outside contractual support is required* for emergency protective requirements." App. 4 (emphasis added). *Second*, Defendants' conduct was within the scope of employment. The Corporate Defendants

6

undisputedly were acting within their employment in hiring and retaining ICs to serve under the DoS contract. And the ICs were acting within their employment in carrying out the September 16 mission.[5] *Finally*, the public interest in efficient government outweighs any costs of granting immunity: "Exposing contractors to tort suits would impair the willingness of contractors to bid on government contracts and hamper the government's ability to operate efficiently." *TWI v. CACI Int'l, Inc.*, No. 1:07-cv-908, 2007 WL 3376661, at *3 (E.D. Va. Nov. 9, 2007).

## II.   PLAINTIFFS' CLAIMS CANNOT BE MAINTAINED UNDER IRAQI LAW.

Even if they were actionable here, Plaintiffs' claims are deficient under Iraqi law.[6]

### A.   CPA Order 17 Bars Plaintiffs' Claims.

Plaintiffs do not dispute CPA Order 17 applies to the Corporate Defendants, or that the Order was intended to provide sweeping immunity to contractors operating in an extraordinarily dangerous environment. Plaintiffs' argument that immunity does not extend to proceedings in U.S. courts is inconsistent with the Order's broad language. Plaintiffs also mischaracterize the effect of Section 4(7), which reserves "the exercise of jurisdiction by the … State of nationality

---

[5] Plaintiffs' insinuate—without citing any authority—that the ICs' conduct was outside the scope of employment because they allegedly disobeyed DoS orders. This is incorrect as a matter of law: an employee's act falls within the scope of employment as long as he "was engaged in performing the duties of his employment at the time he did the wrongful act which caused the injury." *Wegner v. Delly-Land Delicatessen, Inc.*, 270 N.C. 62, 66, 153 S.E.2d 804, 807-08 (1967). Even "the fact that the employer had expressly forbidden him to commit such act" does not take the employee's conduct outside the scope of employment if "the act of the employee was a means or method of doing that which he was employed to do." *Id.*; *see also Harris v. Thompson Contractors, Inc.*, 148 N.C. App. 472, 482, 558 S.E.2d 894, 900-01 (2002), *aff'd*, 356 N.C. 664, 576 S.E.2d 323 (2003). And if the ICs' conduct *was* outside the scope of employment, that is another reason (in addition to Iraqi law's non-recognition of such liability, *see infra* pp. 8-9) that the Corporate Defendants cannot be held vicariously liable for their alleged acts.

[6] Plaintiffs agree that Iraqi law is the applicable substantive law (Opp. 23), but argue that if "Iraqi law provided no … remedy, North Carolina's public policy rules would substitute this State's own law to avoid a miscarriage of justice." *Id.* at 25. Ensuring a remedy for nonresidents of the forum state is not a basis for declining to apply another state's law, particularly when, as here, it is the law of the state where the plaintiffs reside. *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982); *Rowe v Hoffman-La Roche, Inc.*, 917 A.2d 767, 776 (N.J. 2007).

7

of a Contractor." Opp. 24. Defendants do not dispute this Court's "jurisdiction," but rather whether Iraqi law—which undisputedly governs Plaintiffs' claims—provides a basis for liability.

**B. Iraqi Law Does Not Allow Vicarious Liability For Corporate Defendants.**

Even if CPA Order 17 did not provide immunity, the Iraqi Civil Code would not permit the Corporate Defendants to be held vicariously liable for the conduct of the individual defendants, because the Code limits vicarious liability to those private companies that have a contractual relationship with the Iraqi government or its instrumentalities. Mem. 20-21 & Ex. A (Hamoudi Decl.) ¶¶ 7-8. Plaintiffs respond to this argument, which is thoroughly documented and reasoned by Prof. Hamoudi, simply by appending to their brief several opinion witness reports from other lawsuits (apparently obtained via PACER) and asserting that the relevant provisions of the Iraqi Code "speak for themselves and require no interpretation." Opp. 25. As Prof. Hamoudi explains in his supplemental report (Exhibit 1 hereto), the reports on which Plaintiffs rely misinterpret the relevant Code provisions and otherwise mischaracterize the law.

To begin, most of Plaintiffs' reports contain only unsupported conclusions and do not address Prof. Hamoudi's reasoning. Opp. Exs. 12-15, 17; *see* Ex. 1 ¶¶ 4-8. When a "proffered expert offers nothing more than a 'bottom line' conclusion, he does not assist" the court. *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999); *see Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 203 (4th Cir. 2001). For this reason alone, those reports should be set aside.

The only witness offering more than just "bottom line" conclusions, Dr. Ihsan (Opp. Exs. 18-19), bases his opinions on a flawed and incomplete analysis of the language and history of the Iraqi Code and authoritative legal commentaries. *See* Ex. 1 ¶¶ 15-28. Plaintiffs do not dispute that, as Prof. Hamoudi has explained, Article 219 of the Code expressly limits vicarious liability to "the government, the municipalities, the foundations that provide public services, and every person who exploits one of the industrial or trade foundations." Mem. 20; Ex. 1 ¶ 20. However,

Plaintiffs simply assume that a "person who exploits one of the industrial or trade foundations" means any company operating in Iraq. *See* Opp. 25. They fail to analyze the meaning of the Arabic term for "foundation" ("*mu'assassa*"), which Article 51 of the Code defines as *excluding* for-profit companies such as the Corporate Defendants. *See* Ex. 1 ¶¶ 7-10. Moreover, Plaintiffs fail to address Prof. Hamoudi's analysis of other relevant Code provisions, the history of Iraq's legal system as it relates to vicarious liability, and the conclusions of the most influential Iraqi legal commentaries, which cannot be reconciled with Plaintiffs' position. *See id.* ¶¶ 8-14.

    C.    **Punitive Damages Are Not Available Under Iraqi Law.**

Plaintiffs' brief does not address Prof. Hamoudi's opinion that punitive damages are not available under Iraqi law. Mem. 21 & Ex. A ¶¶ 30-31. Prof. Hamoudi's supplemental report (¶¶ 29-42) explains that the assertions found in the reports filed with Plaintiffs' brief are erroneous, and that Plaintiffs' claim for such damages should be dismissed.

**III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST ANY OF THE CORPORATE DEFENDANTS.**

With respect to Mr. Prince and the laundry list of corporate entities named as defendants, Plaintiffs employ a form of pleading that is plainly unacceptable under Fed. R. Civ. P. 8. All of the wrongful conduct by the Corporate Defendants in this case is alleged to have been committed by a fictitious entity that Plaintiffs call "Blackwater-Xe." *See* Mem. 24; Compl. ¶ 39. By failing to plead any tortious conduct by any of the named Corporate Defendants, Plaintiffs have not stated a claim against any of them.

Plaintiffs cannot use the doctrine of veil-piercing to circumvent this basic pleading requirement. *See* Opp. 28-29. The veil-piercing inquiry is merely whether it is appropriate to "extend liability for corporate obligations beyond the confines of a corporation's separate entity." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). "[A] corporation

which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled." *Id.* (citation and quotation marks omitted). Accordingly, before the Court reaches the question whether an entity's corporate form should be disregarded, it must first conclude that the entity engaged in wrongful conduct. The veil-piercing inquiry therefore occurs only *after* the Plaintiff has established that the corporate form has been used to commit a tort. Absent any allegations of wrongdoing by Mr. Prince or any of the corporate entities named as defendants, there is no basis for piercing the corporate veil.

Moreover, even if Plaintiffs could use the doctrine of veil-piercing to circumvent Rule 8, they have not pled facts that support piercing the veil of any specific Corporate Defendant. To begin, the veil-piercing allegations are entirely conclusory, lacking any factual basis. Moreover, like the rest of the Complaint, the veil-piercing allegations lump together all Corporate Defendants as "Blackwater-Xe." Mem. 24-25; Compl. ¶¶ 37-38. Plaintiffs must plead facts establishing that *each entity* whose corporate existence they wish to disregard was operated as an alter ego of the entity alleged to have injured them. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted).

## IV. THE EXHIBITS TO THE COMPLAINT SHOULD BE STRICKEN.

Plaintiffs do not dispute that the exhibits to the Complaint are unnecessary, prejudicial, and improperly submitted only to bolster their allegations. Accordingly, they should be stricken.

## CONCLUSION

For the foregoing reasons, the Corporate Defendants respectfully request that the Court grant their motion and dismiss the Complaint.

Dated: February 16, 2010	Respectfully submitted,

By: /s/ Eric H. Cottrell_____
Eric H. Cottrell (N.C. Bar No. 21994)
ecottrell@mayerbrown.com
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, North Carolina 28202
(704) 444-3500
(704) 377-2033 (fax)

Andrew J. Pincus
apincus@mayerbrown.com
Michael E. Lackey, Jr.
mlackey@mayerbrown.com
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Telephone: (202) 263-3000
Facsimile: (202) 263-3300

Peter H. White
peter.white@srz.com
SCHULTE ROTH & ZABEL LLP
1152 15th Street NW, Suite 850
Washington, DC 20005
(202) 729-7470
(202) 730-4520 (fax)

*Attorneys for Defendants Xe Services LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd. and Erik Prince*

# **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Eric H. Cottrell
Eric H. Cottrell (N.C. Bar No. 21994)
ecottrell@mayerbrown.com
MAYER BROWN LLP
214 North Tryon Street, Suite 3800
Charlotte, North Carolina 28202
(704) 444-3500
(704) 377-2033 (fax)