**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

R. DANIEL BRADY ET AL., )
)
Plaintiffs, )
) Civil Action No. 5:09-CV-00449-BO
v. )
)
XE SERVICES LLC ET AL., )
)
Defendants. )
_____ )

# SUPPLEMENTAL EXPERT REPORT OF HAIDER ALA HAMOUDI

1. I have read Plaintiffs' brief in opposition to Defendants' Motion to Dismiss and the supporting materials submitted by Plaintiffs as concerns the Iraqi law issues raised. These are all reports that were filed in other lawsuits and were apparently copied and submitted in this case.

2. In preparation for this supplemental report, I have reviewed (i) a report on Iraqi law in the *Baragona v. Kuwait Gulf Link Transport Co.* lawsuit submitted to the U.S. District Court for the Northern District of Georgia (Exhibit 12), (ii) two reports prepared by Dr. Saleem Abdullah Al Juboori for several cases litigated in the Eastern District of Virginia federal court (the "E.D. Va. Litigation") (Exhibits 13 and 17), (iii) a report filed by Dr. Aziz Jawad Hadi in the E.D. Va. Litigation (Exhibit 14), (iv) a report filed by Mr. Fadhil Doulan in the E.D. Va. Litigation (Exhibit 15), (v) a report filed by Dr. Ihsan Al-Soufi in the E.D. Va. Litigation (Exhibit 18), and (vi) a report filed by Dr. Ihsan Al-Soufi in a

lawsuit filed in the District of Maryland federal court (Exhibit 19). I have been asked to provide a supplemental expert report regarding these matters, and I do so below.

**I. Vicarious Liability**

3. In my initial expert report, filed as Exhibit A to Defendants' Motion to Dismiss, I explained that under Iraqi law, Article 219 of the Iraq Civil Code does not extend the principle of vicarious liability beyond the Iraqi government, an instrument of the Iraqi government, or a company or natural person with a direct contractual relationship to the Iraqi government. Thus, private companies without a direct contractual relationship to the Iraqi government are not subject to principles of vicarious liability under Iraqi law. My initial expert report further made clear that this conclusion is based not only on the language of Article 219, but also on the most authoritative commentaries of the Iraq Civil Code in use in Iraq, and is consistent with Iraq's history and legal development. (Hamoudi Report, ¶¶ 20-27).

4. Many of the reports mentioned in ¶ 2 above appear to dispute my conclusions concerning Iraqi law, but they do so without providing any analyses supporting their respective positions. Dr. Saleem makes the conclusory assertion that Article 219 applies to *all* companies in Iraq and describes the stipulation concerning vicarious liability as against companies to be "unconditional" (Exhibit 13). Dr. Aziz and Mr. Fadhil Doulan make the same assertion in their statements; namely, that vicarious liability applies to all private companies (Exhibits 14 and 15). It should be noted that these reports were filed in the E.D. Va. Litigation in response to a report I had filed in those cases respecting vicarious liability under Iraqi law. In their reports, Drs. Saleem and Aziz, and Mr. Fadhil

2

provided no analysis to rebut the demonstration that I had made with respect to numerous aspects of Iraqi law, or to otherwise support their assertions.

5. The *Baragona* report that was filed in the Northern District of Georgia lawsuit (Exhibit 12) is similarly unsupported. After quoting Article 219 of the Iraqi Civil Code, that report states that "any person providing any commercial or industrial enterprises" is subject to vicarious liability. However, the report neither explains precisely what the phrase "person providing any commercial or industrial enterprises" is supposed to mean, nor describes any rationale or support for this broad assertion (Exhibit 12, Sec. 4C).

6. The problem with the unsupported conclusions set forth in the reports described above is that they are inconsistent with the text of the Code, and are directly contrary to the most authoritative commentaries used in Iraq. Turning first to the language of the Code, these reports suggest, without providing any analysis, that the term "industrial or trade foundation" means every company in Iraq.[1] Because they assume that every company is an "industrial or trade foundation," they assert that vicarious liability extends to all companies irrespective of their relationship to the government or its instrumentalities. Several problems with this interpretation emerge directly from the plain meaning of the text.

---

[1] In the translations of the reports, the Language Innovations LLC service translated the Arabic word *mu'assasa*, which is found in Article 219, as "institutions" rather than "foundations." (Exhibits 13, 14, 15). The Northern District of Georgia report uses the word "enterprise" for the same term. (Exhibit 12, Sec. 4C). The term in fact originates from the verb *'assasa*, which means "to found, to establish, or to set up," according to the authoritative Arabic English Dictionary, used in virtually every American and British university department that deals with the Arabic language. (Hans Wehr: A Dictionary of Modern Standard Arabic (J. Milton Cowan ed.) (4th ed. 1979)). That dictionary also includes "foundation" as the first definition of the term *mu'assasa*.

7. First of all, the definition of "foundation" (or *mu'assasa*, the same Arabic term used in Article 219) is provided directly in the Civil Code itself:

> The foundation is a juridical person which is established through funds set aside for an undefined term for humanitarian, religious, scientific, technical or athletic purposes *without any intent of profit*. (Iraq Civ. Code Art. 51).

It is not possible to read this provision to suggest that "foundations" include privately owned companies, as companies are by their nature profit making enterprises.[2]

8. Had Iraqi legislators wished to include companies within the ambit of Article 219, they could have used the well-known Arabic term for "company" (*sharika*), rather than the phrase "industrial or trade foundation," which by definition per Article 51 excludes for-profit entities. In a separate report filed in the E.D. Va. Litigation (to which I did not respond because it was filed late in the proceedings), Dr. Saleem disputed my analysis of this language in Article 219, arguing that because the Company Law was not enacted until 1984 (33 years after the Civil Code), it makes sense that the Civil Code would not use the term "company" (Exhibit 17). Dr. Saleem's conclusion fails to take into account the fact that the term "company" is used in the Civil Code itself. For example, in Article 47(f), "company" is used as an example of a juridical person. That the drafters of the Code did not use the term "company" in Article 219 but instead chose to use *mu'assasa* (or "foundation"), which was specifically defined to include only nonprofit entities, is extremely telling.

---

[2] Although the definition in Article 51 by its terms does not require that the foundation be public or government owned, it is difficult to imagine any private *nonprofit* "industrial or trade foundations" to which this provision could conceivably apply. In any event, I do not address this question, as the facts before us do not involve a private, nonprofit foundation.

4

9. Dr. Saleem's second report also states that any limitation on Article 219's purportedly expansive meaning requires "proof." However, as explained in my initial report, and above, the Code itself, as well as the commentaries, provide substantial "proof" that my analysis is correct (Exhibit 17). It should be noted that Dr. Saleem's demand for "proof" actually undermines his position. After all, he provides no "proof" whatsoever that "foundation" in Article 219 means anything different than its definition in Article 51 of the Code.

10. In addition to the problems described above, the controlling language of the Code does *not* extend liability to "industrial and trade foundations" but rather to "any person who exploits an industrial or trade foundation." If one ignores Article 51 and assumes that "industrial and trade foundation" were somehow an idiosyncratic way of describing a company, then Article 219 would apply vicarious liability principles to any person (natural or legal) who conducted business in Iraq. Such a broad conception of vicarious liability is directly contrary to the clear statements contained in the most authoritative commentaries in Iraq.[3]

11. For instance, *Al Wajiz* explains as follows:

> The Iraqi legislator has not laid out a general basis upon which responsibility is established with respect to any principal for the harmful actions that originate from his subordinate wherever these conditions arise. And this is the path taken up by some modern Civil Codes and among them the Egyptian codifiers. This is because [the Iraqi Code] limits the people upon whom vicarious liability may follow in the first section of Article 219, referenced herein, and they are: the

---

[3] As I have explained in my initial report (¶ 9), commentaries in a civil law system by jurists and scholars are the most authoritative sources of law in a civilian system, other than the text of the Code itself, and are the primary sources on which Iraqi lawyers and judges rely to explain or clarify the Code.

> government, the municipalities, other foundations that provide a public service, and *every natural or legal person who exploits an industrial or trade foundation*.
>
> Pursuant to the Iraqi legal text, this [vicarious] liability does not extend to *individuals or companies* who exploit foundations other than trade and industry foundations, nor does it extend to individuals who do not form foundations *but engage in commercial or industrial or trade activities or anything else*. This is because a person is not asked [or called to account] pursuant to the requirements of our law on the wrongs of his servants or his secretary or his cook or his driver . . . . *The policy of the Iraqi law is a shameful, shameful policy* referenced in the Law for the Reform of the Legal Regime, regardless of whether it is respecting the scope of this responsibility, or its basics. (*Al Wajiz* 1:259-60, emphasis supplied).

12. The commentary thus makes clear that (i) there are companies which are not subject to vicarious liability, contrary to the assertions of the reports described above, (ii) engagement in industry and commerce does not *ipso facto* subject one to vicarious liability, (iii) either natural or legal persons can exploit an industrial or trade foundation and become subject to vicarious liability, and (iv) Iraqi principles of vicarious liability are narrow relative to other civilian jurisdictions.

13. Another widely referenced and widely available commentary, *Masadir Al Iltizam* (Abdul Majeed Al Hakeem, originally published 1984 and now in its fourth edition, dated 2007), similarly explains that the scope of Article 219 is narrow. *Masadir* attributes this to the influence of Islamic Law, which has no concept of vicarious liability, on the Iraqi Civil Code (*Masadir Al Iltizam* ¶ 934). I explained this point respecting Islamic Law as well in my original expert opinion (¶ 27). I also noted the fact that Iraq has traditionally been a largely planned economy where the role of the state was large and therefore its responsibilities to the citizenry were vast (¶ 24). If there were to be derogations from Islamic Law in the Iraqi Civil Code, and there are some, it would only make sense that

such alterations would focus on, or relate to, expansions of government responsibilities and liabilities.

14. The Iraqi legal opinions set forth in Plaintiffs' Exhibits 12-15 and 17 either fail to address or are inconsistent with the sources of law described above. Those opinions cannot be reconciled with the text of the Code, which by definition of the term "foundation" excludes private, profit making companies from the ambit of Article 219. They are also contradicted by the most authoritative commentaries, which (i) describe Article 219 as narrow, (ii) indicate that "companies" are not always subject to liability, (iii) suggest that both natural and legal persons who exploit industrial foundations are equally subject to vicarious liability and (iv) do not describe the entry into commerce as the moment at which vicarious liability applies. The reports submitted by Plaintiffs are also contrary to the principles of Islamic law in a manner that is entirely inconsistent with Iraq's history.

15. As noted above, I have also reviewed the opinions submitted by Dr. Ihsan Al-Soufi in the E.D. Virginia Litigation (Exhibit 18). Dr. Ihsan disputed my conclusion that Article 219 does not extend to private companies. His opinion was based on three factors: "(i) Legal provisions, (ii) Jurisprudence opinion [by which he appears to mean commentaries], and (iii) The applications of the law . . ." (Exhibit 18, ¶ 6). None of these is convincing, for the reasons set forth below.

16. As concerns the "legal provisions," by which Dr. Ihsan means the language of the Code, he argues that the consecutive list set forth in Section 1 of Article 219 is somehow divided into two parts. The first part is restricted to the government, the municipalities

and other "institutions" performing a public service. The second part covers private companies, and is purportedly unrestricted (Exhibit 18, ¶9-10). The language of Article 219 does not support Dr. Ihsan's contention.

17. In the first place, he improperly substitutes without explanation the word "company" for the term "institution," which presumably is the translation service's preferred, though less accurate, translation of the Arabic term "*mu'assasa*" (or "foundation," see note 1 above). Hence he asserts as follows:

> As to the second part, it includes any person exploiting one of the industrial or commercial *institutions*. We notice here that the legislator did not impose as a condition that these institutions offer a public service. It is sufficient that they be an industrial or commercial *company*. (Exhibit 19, ¶ 9) (emphasis supplied).

However, the Code itself defines what the translation service calls an "institution" in Article 51 and makes clear that it does not include for-profit entities. Dr. Ihsan does not address this issue.

18. Dr. Ihsan makes the same argument which is found in Dr. Saleem's report that "[i]f the legislator would have wanted [to], he would have restricted the expression of industrial and commercial institutions by adding to it the expression which would link to the government and its institutions . . . etc. Whereas he did not do so, then the categorical stipulation is applied without exception unless there is a stipulation restricting it." (Exhibit 18, ¶ 15).

19. The problem is that there is *precisely* such a restrictive stipulation, which is contained in Article 51 of the Civil Code, and which specifically *excludes* for-profit entities from the definition of what the translation service calls an "institution." Dr. Ihsan nowhere addresses this.

20. Moreover, as concerns the language of the Code, Dr. Ihsan notes that Iraq's Commercial Law, No 30 of 1984, states in Article 5 that a company is defined as having a profit motive (Exhibit 18, ¶ 11). This point only strengthens Defendants' position, as the term "foundation" in the Civil Code specifically *excludes* any entity which has a profit motive.

21. Dr. Ihsan also contests my conclusions respecting the commentaries in a single paragraph, but he does so without challenging or even discussing any of the passages I have quoted from the most authoritative commentaries. Instead he attempts to use illustrations from other sources that, for the reasons explained below, do not appear to support his position (Exhibit 18, ¶ 17).

22. For example, Dr. Ihsan cites Dr. Hakim's *Masadir Al Iltizam* commentary as supporting the notion that vicarious liability under Article 219 is expansive, relying on that treatise as stating that a principal can be liable for damage caused by his driver even if the driver lent the principal's car to another person (Exhibit 18, ¶ 17). However, the section cited by Dr. Ihsan is taken out of context. The section to which he cites is entitled "Incidental Subordination and Liability of Incidental Principals." (*Masadir Al Iltizam,* ¶ 937). That section of the commentary does not concern the scope of Article 219 at all. Instead, it relates to the circumstances under which such liability, where established, might be transferred to another party if control over the subordinates is transferred to another party. To infer from this commentary that Article 219 has a broad scope is to ignore the relevant section of *Masadir.* That section, which appears two pages earlier in

9

the treatise (see ¶ 13 above), expressly describes such scope as narrow, probably due to Islamic law influence (*Masadir Al Iltizam* ¶ 934).

23. I have been unable to locate the two other (obscure) commentaries cited by Dr. Ihsan in any of the major bookstores in Iraq, or in the several law schools where I have inquired. One dates from 1945, before the Civil Code was even in force, and another from 1976 (Exhibit 18, ¶ 17). Neither is in wide circulation, certainly as compared with (among others) the *Masadir* and *Al Wajiz* commentaries on which I have relied throughout my opinions, and which are available in virtually any law library and countless bookstores in Iraq. In any event, the quoted portions of the commentaries on which Dr. Ihsan relies say nothing directly about the scope of Article 219, but appear only to provide examples of vicarious liability. (The relevance of these vicarious liability examples to the facts at hand is not clear).

24. Dr. Ihsan's remaining arguments with respect to vicarious liability are based on four cases he discusses. There are at least two problems with his analyses.

25. First, as I have noted in my initial opinion (¶ 9), Iraq is a civil law system, and as such, there is no notion of binding judicial precedent. Though decisions may be cited as persuasive authority, court decisions, even those of Iraq's highest courts, are not controlling in any way. Moreover, they are infrequently cited, and usually not even known about, by the broader legal community. (¶ 9) Indeed, unless discussed positively

in an authoritative commentary, judicial opinions are not generally published in a manner that allows the legal community access to them.[4]

26. Dr. Ihsan does not deny the lack of access to judicial decisions and orders, but says that "the non-promulgation of a decision does not lessen its value nor den[y] its existence . . ." (Exhibit 18, ¶ 18). The point is not to deny the existence of anything, but only to point out that Iraqi courts in reaching determinations do not rely on the (persuasive and not binding) decisions of other courts in the vast majority of instances—which is the obvious result of, among other things, not having access to those decisions. Dr. Ihsan argues that he is aware that the Court of Cassation in Iraq has reversed decisions of lower courts for failing to apply a decision that it had recently promulgated on the same point of law. However, lower courts are unaware of such decisions, and thus cannot apply precedent in the manner that common law judges do. That a panel of a Court of Cassation might reach the same interpretation of the same Code provision under two different factual scenarios is unremarkable and in no way undermines basic civilian reasoning, which relies on codes in the first instance, and authoritative commentaries thereafter, using cases as persuasive authority only, primarily when they are described in the commentaries.

27. The second problem is that none of the four cases cited by Dr. Ihsan appears to address the scope of Article 219.[5] Although private companies and private persons

---

[4] Although Iraq's Supreme Federal Court, which was created in 2005 and is responsible for determining constitutional issues, makes its decisions available on its website, no other courts in Iraq regularly publish their decisions, or even grant wide public access to them.

appear to be involved in the cases he describes, their relationships (through contract or employment or otherwise) to government entities or other nonprofit foundations that fall within the scope of Article 219 are not addressed. In other words, the issue of the scope of Article 219 may not have been raised by the litigants in these four cases and may not have been an available defense.

28. In any event, it is hard to see how in a civilian system that does not generally rely on cases as a primary source of law and that only affords them persuasive authority, four cases with ambiguous facts over the past 43 years can act as a basis to ignore the clear text of the Civil Code, and the authoritative commentaries.

## II. Punitive Damages

29. In his report in the E.D. Va. Litigation and in his report in the District of Maryland case, Dr. Ihsan asserts that punitive damages are available under Iraqi law. In the E.D. Va. Litigation, he indicated that Articles 202 through 204 do not contain any "indication for refuting or refusing" punitive damages. Dr. Ihsan's reasoning in reaching this conclusion is backwards. (Exhibit 18, ¶21)

30. The issue is not what Articles 202 through 204, to use Dr. Ihsan's terminology, "refute" or "refuse" (Exhibit 18, ¶ 21). Rather, the issue rather is what they *authorize.* As I noted in my initial report (¶ 8), a code like the Iraq Civil Code is not layered on top of any body of judicially created "common law"; it is the sole authorization through

---

[5] Because the decisions of Iraqi courts, including the Court of Cassation, are not published, and because the Court itself has been the target of recent bombings in Iraq, I have no access to the four specific decisions cited by Dr. Ihsan.

which a court is permitted to act. Articles 202 through 204 clearly contain no provision for the granting of damages for anything other than compensation for harm.

31. Dr. Ihsan also mistakenly relies on Article 207. That Article, which deals specifically with the question of awarding damages, reads as follows:

> (1) The court shall measure the compensation in all instances to the amount that represents the harm suffered by the victim and what he has lost in earnings, provided that this is a natural result of the wrongful act.
>
> (2) Taken into account in the measurement is the prevention from the benefits of things and may include guarantees of wages.

Article 207 also concerns compensation for harm and grants discretion to the court to determine the appropriate level of compensation, though importantly, the damages awarded are *compensatory* pursuant to the text of the Article itself. Dr. Ihsan fails to explain (or provide any authority for) the notion that this provision of the Civil Code purportedly allows judges to award punitive damages.

32. The balance of Dr. Ihsan's argument fails to make the critical distinction between *compensation* (and the broad discretion of a judge to determine that compensation on the basis of the harm suffered) on the one hand, and allegedly being able to award punitive damages unrelated to compensating for harm on the other. It is not disputed that judges have broad discretion to determine appropriate levels of compensation for harm. That has nothing to do with the notion that punitive damages are somehow recoverable. In sum, he misreads the sources he has provided.

33. Thus, for example, Dr. Ihsan's citation of a section of a minor commentary to the effect that a judge has broad discretion to evaluate compensation for damages (Exhibit

18, ¶ 22) is unhelpful, as such "broad discretion" related to the amount of *compensation* does not empower a court to award damages to *punish.*

34. Similarly, Dr. Ihsan misreads a 1968 Court of Cassation case on which he relies because of his continued conflation of discretion to award compensation, and the purported ability to order damages as punishment. Leaving aside the fact that decisions of the Court of Cassation cannot be controlling in a civilian system, the referenced decision has nothing at all to do with punitive damages. As explained in the *Masadir Al Iltizam* commentary, the referenced 1968 lawsuit involved a husband's wrongful death action related to his deceased wife, in which he sought damages for himself and on behalf of his six minor children. The court held that the harm for which compensation was due was not only the material loss (which, given that the wife did not work, was not much), but also the loss of companionship and moral support offered by the wife to the husband and children. It is in this context that the court indicated that all damages, and not simply material damages, are due to the victim of a wrong. Punitive damages were not an issue in the case and were not discussed at all by the court (*Masadir* ¶ 872).

35. The *Masadir* commentary (and the other Iraqi case discussed therein and raised by Dr. Ihsan in his report) likewise deal only with compensation for harm, not punitive damages (Exhibit 18, ¶ 24). That commentary simply discusses the propriety of recovery of damages for moral harm and indicates that the Iraqi Civil Code permits such recovery, citing the case noted above and another 1968 case to make this point (*Masadir* ¶ 872). Recovery for moral harm is by definition *compensation* for moral injury (Hamoudi Report, ¶ 17). It is not punitive.

36. Dr. Ihsan's citation of an Egyptian case likewise concerns discretion for awarding damages as *compensation* and therefore is irrelevant. In addition, that case is from a different jurisdiction (and is thus based on a different Civil Code) and is therefore minor persuasive authority at best (Exhibit 18, ¶ 24).[6]

37. As indicated in my initial report, the fact that civil courts are responsible for awarding compensation solely on the basis of harm is consistent with the authoritative commentaries used in Iraq. *Al Wajiz* makes clear, in complete conformity with Article 207, that compensation is solely for harm suffered (*Al Wajiz* 2:57). Sanhuri likewise makes clear that "compensation in any form—compensation for a specific matter or as replacement, in cash or in kind, compensation in installments or in capital—is measured in accordance with the direct harm that occurred by virtue of the fault." (Sanhuri *Wasit* 1:1097).

38. Finally, the relationship of civil to criminal liability makes the imposition of punitive damages in the civil context nonsensical. Iraqi rules grant priority to criminal courts and their findings over civil courts, in a manner that is considerably different from the United States, where the two proceedings are separate.

---

[6] In the report filed in the District of Maryland case, Dr. Ihsan makes the same conflation to argue in favor of punitive damages, using largely the same sources (Exhibit 19). While throughout he makes much of the fact that the courts have asserted broad discretion to determine the amount of *compensation for harm,* nowhere is it suggested in the sources he cites that a court may award damages in a manner that is not compensatory but punitive.

39. Under Iraqi law, if a given set of events potentially give rise to both criminal and civil responsibility, the criminal matter must be heard first, and any civil actions in process must be suspended pending the outcome of the criminal trial. (*Al Wajiz* 1:203).

40. Upon the conclusion of the criminal proceedings, if guilt is found, a civil action may be instituted in the civil court, or a request may be made to the criminal court by the injured party to assign civil responsibility as well as criminal responsibility. (*Al Wajiz* 1:203). If no guilt is found, then this determination forecloses the possibility of civil recovery under the same set of facts unless the grounds for civil liability are unrelated to the commission of a crime (for example, if the criminal court found there was no criminal recklessness this would not preclude the possibility of civil recovery for ordinary negligence) (*Al Wajiz* 1:204).

41. Criminal responsibility and all issues concerning punishment are therefore always determined by the criminal court. Civil liability is then subsequently determined. In the words of *Al Wajiz,* "this is because the civil suit must follow the criminal suit, based on the concession that the right of society is superior to the right of the individual." (*Al Wajiz* 1:203). Dr. Hakim makes the point more forcefully in his *Masadir* treatise (¶ 463):

> Criminal responsibility is stronger than civil responsibility because it is the right of society and the other is the right of an individual. . . . And the reason that the civil court is bound by what the criminal court has found from the facts is the absolute authority of the criminal court toward all, including the litigants in the civil case and the necessity of respecting the rulings of the criminal court.

42. In a system such as the one in Iraq, it makes no sense to permit a civil court to impose a sanction that is punitive in nature. Punishment is solely within the ambit of the Penal Code and the criminal courts responsible for interpreting and applying it. For a civil court to apply punitive sanctions would usurp the jurisdiction of a criminal court.

February 16, 2010

Respectfully Submitted,

Haider Ala Hamoudi
Assistant Professor of Law
University of Pittsburgh