IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:09-cv-00449

R. DANIEL BRADY ET AL.,    )
                           )
        Plaintiffs,        )
                           )
    v.                     )
                           )
XE SERVICES LLC ET AL.,    )
                           )
        Defendants.        )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT JEREMY P. RIDGEWAY'S OPPOSITION TO PLAINTIFFS' SEPARATED MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

COMES NOW Defendant Jeremy P. Ridgeway ("Mr. Ridgeway"), by counsel, pursuant to Local Rule 7.2, and hereby submits this Memorandum in Support of Defendant Jeremy P. Ridgeway's Opposition to Plaintiffs' Separated Motion for Leave to Conduct Jurisdictional Discovery. In support, Mr. Ridgeway states as follows:

**SUMMARY OF ARGUMENT**

Although the Plaintiffs attempt to hide from Fourth Circuit precedent by citing to a standard for jurisdictional discovery purportedly set forth by the Third Circuit, the Fourth Circuit is actually quite clear regarding its jurisdictional discovery standard. If a party cannot submit a factual proffer – via affidavits or documents – that demonstrates prima facie evidence of personal jurisdiction, they are not entitled to go on a "fishing expedition" for potential contacts. Conclusory allegations are not sufficient. In this case, the Plaintiffs have submitted *absolutely nothing* in the way of established facts to this Court regarding Mr. Ridgeway's contacts with the

1

forum.  Instead, the Plaintiffs submit documents which would perhaps support a personal jurisdiction claim against some of the corporate Defendants, who have not challenged personal jurisdiction in this case.  Contacts of another defendant are not a valid source of evidence of Mr. Ridgeway's contacts with the forum.  With regard to Mr. Ridgeway, the Plaintiffs offer, by their own admission, only allegations.  As the Fourth Circuit requires significantly more than that to obtain jurisdictional discovery, this Court should deny Plaintiffs' Separated Motion for Leave to Conduct Jurisdictional Discovery (the "Motion[1]").

Even if Plaintiffs had submitted a sufficient proffer to make jurisdictional discovery available, it would still be inappropriate to grant jurisdictional discovery in this case due to the undue burden that it would place on Mr. Ridgeway.  Based on the Memorandum, it is entirely likely that the Plaintiffs would delve prematurely into the merits of this case through their efforts at jurisdictional discovery.  This jurisdictional discovery would in no way be "limited."  Its scope would likely force Mr. Ridgeway to incur massive expenses, particularly in dealing with the Iraqi Plaintiffs.  With Plaintiffs having shown nothing in the way of facts to support the conclusion that this is anything but a fishing expedition for jurisdiction – and a "free bite at the apple" as to merits – it would be entirely inappropriate to allow discovery, even if the Plaintiffs had met their burden, which they have not.

**NATURE OF THE ACTION**

Plaintiffs are Iraqi residents and the estates of Iraqis asserting tort claims for injuries allegedly suffered in Iraq as a result of actions that occurred in Iraq.  They seek to recover damages in North Carolina from individuals – including Mr. Ridgeway – who they allege to have

---

[1] Citations to Plaintiffs' Memorandum in Support of its Motion for Leave to Conduct Jurisdictional Discovery, or in the Alternative, for an Extension of Time to Respond to Ridgeway's Motion to Dismiss, which was incorporated by reference into the Motion is cited herein as the "Memorandum."

2

committed these actions, as well as from the government contractor corporations (the "Company Defendants") who allegedly employed them.

## RELEVANT PROCEDURAL HISTORY

The Complaint in this case was filed in the Superior Court for Wake County on September 15, 2009. Following removal by the Defendants, Mr. Ridgeway filed a Motion to Dismiss the Complaint (the "Motion to Dismiss"), alleging lack of personal jurisdiction, on December 24, 2009. The Motion to Dismiss attached a declaration from Jeremy P. Ridgeway regarding his contacts with the forum state (the "Ridgeway Dec."). Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery, or in the Alternative, for an Extension of Time to Respond to Ridgeway's Motion to Dismiss on January 25, 2010. Following instructions from the Court, Plaintiffs re-filed the instant Motion on February 3, 2010.

## RELEVANT FACTS

Mr. Ridgeway worked for the entity doing business as Blackwater Worldwide and Blackwater USA, formerly known as EP Investments, LLC, and now known as Defendant Xe Services, LLC ("Blackwater" or the "Company Defendants"), from approximately December 27, 2006 through October 5, 2007. Ridgeway Dec. ¶ 4. Prior to his employment with Blackwater, Mr. Ridgeway traveled to the east coast to participate in what was essentially a two-week job interview to determine if he was qualified to work for Blackwater (the "Vetting Period"). Ridgeway Dec. ¶ 12-13. The Vetting Period took place, in part, in Virginia Beach, Virginia and, in part, in Moyock, North Carolina. Ridgeway Dec. ¶ 15.

Mr. Ridgeway began his employment for Blackwater by traveling to Baghdad, Iraq on or about December 27, 2006. Ridgeway Dec. ¶ 4, 6. During his employment, Mr. Ridgeway was specifically told *never* to contact anyone at the facilities in Moyock, North Carolina or at the

3

principal place of business for Blackwater, Virginia. Ridgeway Dec. ¶ 5, 10. The incident that is the subject matter of this case took place on September 16, 2007. After Mr. Ridgeway left Blackwater, he engaged in some additional contacts with Blackwater officials in Moyock, North Carolina regarding disability insurance during October, November and December of 2007. Ridgeway Dec. ¶ 16-17. Mr. Ridgeway swore in his declaration that, to his knowledge, he has had no additional contacts with North Carolina apart from this case.

## ARGUMENT

I. **Plaintiffs Have Failed to Establish the Sufficient Factual Proffer Required for the Court to Award Jurisdictional Discovery.**

Plaintiffs' Memorandum cites to a purported Third Circuit standard for obtaining jurisdictional discovery that is based on a finding of "reasonable particularity of the possible existence of the requisite contacts between the party and the forum state." Memorandum at 5. The Memorandum generally ignores the Fourth Circuit, citing to only one Fourth Circuit case regarding jurisdictional discovery, *Base Metal Trading, Ltd v. OKSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208 (4th Cir. 2002) ("Base Metal Trading"). In Base Metal Trading, the Fourth Circuit rejected the plaintiff's appeal for jurisdictional discovery, noting that that it would be inappropriate to grant discovery where "the plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." Base Metal Trading, 283 F. 3d at 216, n. 3.

In fact, the Fourth Circuit has not adopted any sort of "reasonable particularity" standard. Rather, "the Fourth Circuit instructs that although 'limited discovery may be warranted to explore jurisdictional facts in some cases,' *citations omitted,* [w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Hill v. Brush Engineered Materials, Inc.*, 383 F.

4

Supp. 2d 814, 819 (D. Md. 2005), *citing Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402-403 (4th Cir. 2003)("Carefirst"). Jurisdictional discovery will be denied where a Plaintiff has failed to proffer any further facts – other than erroneous or conclusory assertions regarding a defendant's contacts with the forum – that would affect the Court's exercise of jurisdiction. *Id.*, *citing ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707, 716 n.3 (4th Cir. 2002) ("ALS").

ALS involved a copyright infringement suit between a Maryland corporation and a Georgia internet service provider. The two parties submitted affidavits regarding the defendant's contacts with the forum. In addressing jurisdictional discovery, the Fourth Circuit noted that the plaintiff had failed to proffer sufficient facts material to the jurisdictional ruling; despite submitting an affidavit, the plaintiffs had made only conclusory allegations of jurisdiction in support of its request for discovery. ALS Scan, 293 F. 3d at 716, n.3. Accordingly, jurisdictional discovery was denied.

Carefirst was a trademark infringement action involving a Maryland corporation and an Illinois corporation. The Defendant acknowledged *de minimis* contacts with Maryland including 0.0174% of its total donations received, as well as a contract to purchase domain names from a company headquartered in Maryland. Carefirst, 334 F. 3d at 394-395. The trial court found that in light of the defendant's specific affidavits and the lack of any concrete proffer by the plaintiff, the plaintiff had not demonstrated that it was entitled to discovery. Carefirst at 402.

Plaintiffs' request for jurisdictional discovery is the classic "fishing expedition" alluded to in Base Metal Trading. Here, the only concrete proffer of material facts that Plaintiffs can

claim to have brought to this Court – as opposed to the "beliefs,[2]" "allegations,[3]" "presumptions,[4]" "submissions,[5]" or "potential contacts[6]" that Plaintiffs have submitted – is their creative, but wildly inaccurate, interpretation of Mr. Ridgeway's Declaration.[7] The Memorandum contains one unsubstantiated allegation after another, such as: "Defendant Ridgeway maintained an ongoing relationship with Blackwater-Xe's headquarters in Moyock;[8]" that Mr. Ridgeway's job interview in Moyock "makes it likely that Defendant Ridgeway would have submitted an employment application to the Moyock office;[9]" that Mr. Ridgeway was trained to use certain weaponry in North Carolina;[10] that Mr. Ridgeway maintained an ongoing relationship with Blackwater-Xe's "headquarters" in Moyock;[11] that Mr. Ridgeway's activities in Iraq were coordinated in North Carolina;[12] and that Mr. Ridgeway was evaluated in North Carolina.[13] There are other similarly baseless assertions in the Memorandum. Many of these assertions are contrary to Mr. Ridgeway's sworn Declaration – which denied the jurisdictional allegations outlined in the Complaint specifically – without any corresponding proffer by the Plaintiffs in support. This alone is grounds to deny Plaintiffs' Motion. *See Reynolds and Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 565-566 (E.D. Va. 2004) (in denying a motion for jurisdictional discovery, the court noted that "[i]n the face of [Defendant's]

---

[2] Memorandum at 1, 3, 4, 11.
[3] Memorandum at 9, 11.
[4] Memorandum at 10.
[5] Memorandum at 11.
[6] Memorandum at 12.
[7] Here is just one example of Plaintiffs' work here: Plaintiffs attempt to cite Mr. Ridgeway's declaration for the proposition that Blackwater's "primary operational facility" is located in North Carolina. Memorandum at 2. This "primary operational facility" language appears to be central to Plaintiff's claims in this case. In fact, all Mr. Ridgeway's Declaration notes is that the companies have a facility in Moyock, North Carolina, which is not in question.
[8] Memorandum at 6.
[9] Memorandum at 11.
[10] Memorandum at 4.
[11] Memorandum at 6.
[12] Memorandum at 3.
[13] Memorandum at 7.

affidavit that [Defendant] does not have any contacts with Virginia relevant to [Plaintiff's] cause of action, [Plaintiffs] ask the court to authorize a 'fishing expedition' in hopes that they can turn some contact that would permit this court to exercise jurisdiction.")

Plaintiffs do submit documents which may have been relevant if they were attempting to establish jurisdiction against the Company Defendants, but there is no mention of Mr. Ridgeway in any of these documents. The Company Defendants have not challenged personal jurisdiction in this case; not surprisingly the Plaintiffs find it easier to attempt to establish personal jurisdiction against them than against Mr. Ridgeway. But evidence of jurisdiction against a company does not constitute evidence of jurisdiction against the individual. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 1249 (1958)("the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state"); *CEM Corp. v. Personal Chemistry AB*, 192 F. Supp. 2d 438, 441 (W.D. N.C. 2002)(same); *McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417 (W.D. Pa. 2000) (court must determine the question of personal jurisdiction separately as to each defendant, and therefore another defendant's contacts with the forum are irrelevant to the question of whether the court can assert specific jurisdiction on another defendant). For example, Plaintiffs submit that a government contract bid proposal from the Company Defendants to the Department of State is somehow relevant to the question of whether Mr. Ridgeway was put on notice that he was subject to suit in North Carolina. Of course, Plaintiffs fail to assert or show any basis for the idea that Mr. Ridgeway was even aware of this bid proposal. Equally irrelevant is the submission of clauses from another individual's employment contract with the Company Defendants.

Rather than submitting their own factual proffer, Plaintiffs also attempt to argue that the facts set forth in Mr. Ridgeway's declaration, when combined with Plaintiffs' allegations, demonstrate sufficient connections with the forum. Such arguments – along with being incorrect – are premature. Plaintiffs are attempting to apply law to facts when the *Plaintiffs have not yet established those facts*. Should Plaintiffs submit a factual proffer in support of their jurisdictional claims, the cases cited by Plaintiff may be ripe for discussion. Mr. Ridgeway will address those arguments – including those set forth in Sections B(1) and B(2) of Plaintiff's Memorandum – at the appropriate time; they are completely irrelevant with regard to the Court's determination of the Plaintiffs' right to jurisdictional discovery.

II. **Had Plaintiffs Established Prima Facie Evidence of Personal Jurisdiction, Jurisdictional Discovery Would Still be Inappropriate Due to the Undue Burden on Mr. Ridgeway.**

Even if Plaintiffs had submitted a sufficient proffer to make discovery available, it would still be inappropriate to grant discovery in this case. Mr. Ridgeway resides in California with his wife and children, and it would be unduly burdensome and expensive to require him to travel to North Carolina to participate in discovery. Further, given Plaintiffs' attempts to link the Company Defendants into their jurisdictional claims, it appears likely that Plaintiffs plan to tread fully into the merits when they proceed with their "limited" jurisdictional discovery. Given the status of the case at this time – including pending Rule 12 Motions by all Defendants – it would be inappropriate to delve into the merits at this time. It would be equally inappropriate to table the Rule 12 Motions while an extremely expensive merits discovery process proceeds.

The massive expense of jurisdictional discovery here would not be limited to the difficulties associated with Mr. Ridgeway's California residency. Plaintiffs note a standard for

the analysis of a defendant's minimum contacts for specific jurisdiction in North Carolina. Memorandum at 6-7. As noted in the Memorandum, the convenience of the parties is a relevant factor in determining specific jurisdiction. Most commonly noted in *forum non conveniens* motions, as Plaintiffs here are foreign, Plaintiffs are not entitled to the presumption that North Carolina is a convenient forum for them. *See The In Porters, SA v. Hanes Printables, Inc.*, 653 F. Supp 494 (M.DN.C. 1987), *citing Hodson v. A.H. Robins Co.*, 715 F. 2d 142, 144 ("foreign plaintiffs' choice of an American forum …entitled to little weight"). Accordingly, Plaintiffs would be subject to discovery by Mr. Ridgeway as to this issue. Therefore, for Mr. Ridgeway to avoid prejudice in this matter, he would be forced to take discovery of the Iraqi plaintiffs in this case, an inordinately time-consuming and expensive venture.[14]

## CONCLUSION

When a court is presented with nothing other than speculation to justify jurisdictional discovery, jurisdictional discovery should be denied. Plaintiffs *admit* that the Memorandum presents nothing more than factual allegations. Memorandum at 1 ("Because Plaintiffs have presented factual allegations … it is appropriate that the Court grant Plaintiffs leave to conduct limited discovery"). The Plaintiffs simply cannot controvert that Mr. Ridgeway has denied the allegations in the Complaint of his contacts with North Carolina explicitly and that in response, Plaintiffs have provided this Court with *absolutely nothing* other than unsubstantiated allegations to demonstrate any contacts of Mr. Ridgeway's – and not the Company Defendants' – with the forum. Unless their Opposition to the Motion to Dismiss plans to add new information, this

---

[14] This presumes that Mr. Ridgeway would not be deemed to have waived his personal jurisdiction motion by proceeding with jurisdictional discovery. If this Court were to find that such behavior would waive his Motion to Dismiss, then Mr. Ridgeway would be unduly prejudiced by discovery proceeding without him having a fair opportunity to conduct the same.

9

Court should dismiss the claims against Mr. Ridgeway. But for now, this lack of support requires the Court to deny the instant Motion.

WHEREFORE, Defendant Ridgeway requests that the Court deny Plaintiffs' Separated Motion for Leave to take Jurisdictional Discovery.

Respectfully submitted this the 17th day of February, 2010.

By: /s/ Edward H. Maginnis

Edward H. Maginnis (Bar No. 39317)
**MAGINNIS LAW, PLLC**
6030 Creedmoor Road, Suite 200
Raleigh, NC 27612
Telephone: 919.526.0450
Facsimile: 919.882.8763
emaginnis@maginnislaw.com

*Counsel for defendant Jeremy P. Ridgeway*