UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-449-BO / No. 5:09-CV-450-BO

R. DANIEL BRADY, ET AL., )
)
        Plaintiff, )
)
v. ) O R D E R
)
XE SERVICES LLC, BLACKWATER )
SECURITY CONSULTING LLC, ET AL., )
)
        Defendant. )
_____)

This matter is before the Court on Plaintiffs' Motions to Remand; for Leave to Conduct Jurisdictional Discovery; and for Extension of Time. For the reasons below, Plaintiffs' Motion to Remand is DENIED. Plaintiffs' Motions for Leave to Conduct Jurisdictional Discovery and for Extension of Time are GRANTED.

## BACKGROUND

R. Daniel Brady, as estate administrator, has filed a lawsuit on behalf of nine Iraqi citizens: three decedents; a family member of each decedent; and three injured, in an alleged unprovoked attack by XE Services LLC-Blackwater Consulting LLC ("XE") operatives at a traffic circle known as Nisoor Square, in Baghdad, Iraq on September 16, 2007. Plaintiffs name 23 Defendants: Xe Services, formerly known as Blackwater Security Consulting; Eric Prince, the owner of Blackwater; fourteen other companies Plaintiffs allege are a part of XE Services (collectively the "Corporate Defendants"); and six individuals accused of personally taking part in the attack.

Plaintiffs suit includes nine claims. Four claims against the Corporate Defendants,

including two claims under a theory of vicarious liability for wrongful death and personal injury, both under North Carolina law, and in the alternative, Iraqi law. The other two claims are under North Carolina law for direct liability for wrongful death and personal injury for negligent supervision and negligent retention. Claims five through eight are against the six individuals alleged to be directly involved in the attack. Claims five and six are for wrongful death under North Carolina law, and in the alternative, Iraqi law. Claims seven and eight are for negligence causing personal injury, again under North Carolina law, and in the alternative, Iraqi law. The ninth claim is for punitive damages under North Carolina law against all Defendants.

A hearing on Plaintiffs' motions was held on April 9, 2009 in Raleigh, North Carolina.

## DISCUSSION

### Plaintiffs' Motion to Remand to State court

Defendants seek to remove this matter pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. The party seeking removal has the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). The court must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *Id.* To remove under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), Defendants must satisfy a three-pronged test: (1) they were persons who acted under a federal officer; (2) they performed the actions for which they are being sued "under color of office"; and (3) they must be able to assert a colorable federal defense. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 145-151 (2007). The federal officer removal statute is not "narrow" or "limited." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (*citing Colorado v. Symes*, 286 U.S. 510, 517 (1932)).

In this case, Corporate Defendants had a contract directly with the U.S. State Department.

2

When "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks," the "acting under" requirement is satisfied. *Watson v. Philip Morris Cos.*, 551 U.S., at 152, 154. The contract was to assist with the performance of a vital government function, protecting U.S. diplomats traveling in a war zone. The contract acknowledged as much, stating, "[t]he [State Department] is unable to provide protective services on a long-term basis from its pool of [employees], thus outside contractual support is required for emergency protective requirements states on extremely short notice." D.E. #41, Exhibit 3, Section C.1.2.

The second prong requires Defendants to show that they performed the actions for which they are being sued under color of federal office. Courts have said this requires a causal nexus between the allegedly tortious "conduct and asserted official authority." This has been interpreted broadly, and the question generally is whether the alleged wrongful conduct occurred while Defendants were performing their official duties. "[W]hen determining whether a causal connection exists," the Court should "credit Defendants' theory of the case." *Isaacson*, 517 F.3d at 137 (citing *Jefferson County v. Acker*, 527 U.S. 423, 432 (1989)). Plaintiffs argue that "acting under" should be interpreted broadly and is only implicated where a federal officer has 'direct and detailed control' over the activity. While this would be cause for removal under § 1442, it is not the minimum threshold Defendants must meet for removal. Plaintiffs also contend Defendants are not entitled to removal because the alleged shooting was criminal conduct that exceeded the scope of the contract. However, this argument would require the Court to determine the outcome of the case before determining the threshold removal question. If, as Plaintiffs contend, removal was only appropriate when Defendants were "lawfully assisting" the

3

government, then removal could never occur in a criminal matter. This does not reflect the plain language of the statute that recognizes removal is appropriate for criminal or civil charges. Defendants have alleged they were acting under the control and direction of the State Department, and have provided the parties' contract as evidence to support their contention. "[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal--not state--courts to answer." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2nd Cir. 2008) (*citing Willingham*, 395 U.S. at 409).

Finally, Defendants are not required "virtually to win [their] case before [they] can have it removed," because the fundamental purpose of § 1442 is to ensure that federal defenses are tried in and determined by a federal court. *Jefferson County*, 527 U.S. at 431 (internal quotation marks omitted); *Isaacson*, 517 F.3d at 138-39. All that the federal officer removal statute requires is that the defendant raise a "colorable" defense that is "based in federal law." *Mesa v. California*, 489 U.S. 121, 129 (1989). A defense can be "colorable" even if it not "clearly sustainable" and thus is "ultimately reject[ed]" on the merits. *Willingham*, 395 U.S. at 407; *Jefferson County*, 527 U.S. at 431. Defendants have asserted five federal defenses: (1) substitution of the United States under the Westfall Act; (2) the political question doctrine; (3) implied foreign affairs preemption; (4) the government contractor defense; and (5) derivative absolute immunity.

Defendants allege they were on a mission with a diplomat, pursuant to their contract with the U.S. State Department, when a car bomb exploded. Defendants job was to safely get the diplomat back to the Green Zone, and Defendants argue their actions were all pursuant to

4

fulfilling this mission. For jurisdictional purposes, the Court must credit Defendants' theory of the case, under which Defendants did act properly and at the behest of State Department officials. See *Jefferson County*, 527 U.S. at 435-36; *State v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990) (explaining the defendant need only "allege facts that would support a colorable immunity defense if those facts were true"). If the facts are as Defendants allege, a number of federal defenses, including the political question doctrine, would be available to Defendants. The political question doctrine applies in suits against government contractors with the same force as in suits against the government. See *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1281 (M.D. Ga. 2006) ("When the military seeks to accomplish its mission by partnering with government contractors who are subject to [their] orders, regulations, and convoy plan, the use of those civilian contractors to accomplish the military's objectives does not lessen the deference due to the political branches in this area."). *Id.* Defendants have met their burden at all three prongs for removal under 28 U.S.C. § 1442(a)(1). Accordingly, Plaintiffs' Motion to Remand is DENIED.

<u>Plaintiffs' Motion for Leave to Conduct Jurisdictional Discovery</u>

In response to Defendant Ridgeway's Motion to Dismiss for lack of personal jurisdiction, Plaintiffs are seeking leave to conduct jurisdictional discovery to determine the nature, extent, and scope of Ridgeway's contacts with North Carolina. Plaintiffs allege XE is principally based in North Carolina, and Ridgeway had an on-going relationship with XE's Moyock, North Carolina office, including being evaluated, disciplined, and paid salary and benefits through that office. Plaintiffs also allege that the acts committed in Iraq used weaponry that Ridgeway was trained to use in North Carolina; his supervisors were in Moyock; and that Ridgeway's contract

5

was drawn with the Moyock office. Plaintiffs want to confirm these allegations and determine, among other things, if Ridgeway's contract included a North Carolina choice of law provision. Other than spending a portion of a two week vetting session/job interview in Moyock, and a handful of emails to administrators in Moyock who were handling a disability claim for injuries he sustained while in Iraq, for his Illinois-based insurer, Ridgeway denies all other contacts with North Carolina that Plaintiffs allege and argues discovery would be unduly burdensome.

When personal jurisdiction is challenged under 12(b)(2) of the Federal Rules of Civil Procedure, the burden is on the plaintiff to prove grounds for jurisdiction by a preponderance of the evidence. The decision of whether to permit jurisdictional discovery is a matter of discretion of the court. *See Base Metal Trading, Ltd. V. Ojsc Novochuznetsky Aluminum Factory*, 283 F.3d 208, 216, n.3 (4th Cir. 2002). Jurisdictional discovery is inappropriate where "plaintiff simply wants to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction." *Id.*

To support their allegations, Plaintiffs have included a copy of a contract for another independent contractor that they allege was similarly situated as Ridgeway. Plaintiffs also argue that they have a good faith basis to believe XE utilized a boilerplate contract similar to the one provided for all its independent contractors, which would include Ridgeway. The contract supports some of the allegations made by Plaintiffs, and in conjunction with Plaintiffs' other claims, and Ridgeway's admissions, provides a sufficient basis to find that jurisdictional discovery is appropriate. Plaintiffs' Motion for Leave Jurisdictional to Conduct Discovery is GRANTED. Plaintiffs have thirty (30) days from the filing date of this Order to conduct jurisdictional discovery.

<u>Plaintiffs' Motion for Extension of Time</u>

For good cause shown, and with Defendant Ridgeway's consent, Plaintiff's Motion for Extension of Time to Respond in Opposition to Defendant Ridgeway's Motion to Dismiss is GRANTED. Plaintiffs have fourteen (14) days from the filing of this Order to file a response.

## CONCLUSION

Accordingly, Plaintiffs' Motion to Remand is DENIED. Plaintiffs' Motions for Leave to Conduct Jurisdictional Discovery and for Extension of Time are GRANTED. As a final matter, this Court, acting *sua sponte*, and for administrative purposes, DIRECTS the Clerk of Court to consolidate case numbers 5:09-CV-449-BO and 5:09-CV-450-BO. Case no. 5:09-CV-449-BO is hereby designated the lead case and it is ORDERED that all future filings made by the parties be designated accordingly.

SO ORDERED.

This 17 day of May, 2010.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE