UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CV-449-BO

R. DANIEL BRADY ET AL., )
    Plaintiffs, )
)
v. ) **ORDER OF REMAND**
)
XE SERVICES LLC, BLACKWATER )
SECURITY CONSULTING LLC ET AL., )
    Defendants. )

Before the Court are the following motions:

(1) Defendants Ball, Heard, Liberty, Slatten, and Slough's Motion to Dismiss [DE 26];

(2) The Corporate Defendants'[1] Motion to Dismiss [DE 27];

(3) Defendant Ridgeway's Motion to Dismiss [DE 37];

(4) Defendants Ball, Heard, Liberty, Slatten, and Slough's Motion to Substitute the United States as Defendant Under the *Westfall* Act [DE 62]; and

(5) The Corporate Defendants' Motion to Substitute the United States as Defendant Under the *Westfall* Act [DE 64].

As set forth below, Defendants Ball, Heard, Liberty, Slatten, Slough and the Corporate Defendants' respective Motions to Dismiss [DE 26; 27] are GRANTED as Plaintiffs' lack

---

[1] Defendants Xe Services LLC, Blackwater Security Consulting LLC, U.S. Training Center, Inc., Raven Development Group LLC, GSD Manufacturing LLC, Prince Group, LLC, Total Intelligence Solutions LLC, Greystone Limited a/k/a Greystone Ltd., Terrorism Research Center, Incorporated, Technical Defense Associates, Incorporated, Aviation Worldwide Services, L.L.C., Guardian Flight Systems LLC, Presidential Airways, Inc., STI Aviation, Inc., Air Quest, Inc., Samarus Co. Ltd., and Erik Prince are collectively referred to as the "Corporate Defendants" or collectively as "Xe." Although Defendant Prince is a natural person, Plaintiffs purportedly sue Prince on a theory of vicarious liability for conduct of the six individual independent contractors named as defendants. Accordingly, Prince is included in the group denominated "Corporate Defendants" or "Xe."

standing to sue in this Court; Defendant Ridgeway's Motion to Dismiss [DE 37] is DENIED AS MOOT; Defendants Ball, Heard, Liberty, Slatten, Slough and the Corporate Defendants' respective Motions to Substitute the United States as Defendant Under the *Westfall* Act [DE 62; 64] are DENIED AS MOOT.

## BACKGROUND

In this action, Plaintiffs seek relief for the Defendants' alleged armed engagement of Iraqi civilians in September of 2007. The principal corporate defendant in this case, U.S. Training Center, Inc. ("USTC"), at all times relevant to the facts underlying this action, provided security services to protect government officials in Iraq pursuant to a contract (the "WPPS Contract") with the State Department.[2] Under the WPPS Contract, teams of independent contractors ("ICs") working with USTC escorted government officials to and from meetings throughout Baghdad, Iraq.

Plaintiffs allege that on September 16, 2007, ICs performing a support mission unjustifiably fired upon, killed, and seriously injured a group of civilians at a location known as Nisur Square. Nisur square is located just outside the fortified "green zone" in Baghdad, Iraq. (Compl. ¶¶ 68-78.) Plaintiffs assert claims against the ICs for wrongful death and negligence causing personal injury (*Id.* at ¶¶ 110-25.) Plaintiffs also seek to hold the Corporate Defendants liable for these alleged deaths and injuries on theories of vicarious liability (*id.* at ¶¶ 126-41), negligent supervision *(id.* at ¶¶ 142-46), and negligent retention (*id.* at ¶¶ 147-53.)

The Complaint was filed in Wake County Superior Court on September 15, 2009.

---

[2]The contract, the Worldwide Personal Protective Services (WPPS) contract, was executed between the State Department and "Blackwater Lodge and Training Center, Inc.," an entity which has since been renamed "U.S. Training Center, Inc."

2

Defendants removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1) on October 15, 2009. On November 12, 2009, the Defendants filed their respective Motions to Dismiss [DE 26; 27] pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f). In support of their Motions to Dismiss, Defendants contend:

(1) Plaintiffs lack standing to sue in this Court;

(2) the Complaint presents nonjusticiable political questions;

(3) Plaintiffs' claims are preempted by federal foreign policymaking authority;

(4) Plaintiffs fail to state a claim under applicable Iraqi law;

(5) Plaintiffs' claims are barred by the government contractor defense;

(6) Plaintiffs' claims are barred by absolute immunity; and

(7) Plaintiffs fail to state a claim against any of the corporate entities named as Defendants or against Defendant Erik Prince personally.

On December 24, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant Ridgeway moved to dismiss the Complaint on a separate and distinct theory [DE 37]. Ridgeway contends in his Motion to Dismiss that this Court lacks *in personam* jurisdiction over him and, accordingly, this Court lacks the power to adjudicate any of the alleged claims against him.

On April 7, 2010, after the government refused to certify the Defendants as "employee[s] of the Government . . . acting within the scope of [their] . . . employment" for purposes of the Federal Tort Claims Act ("FTCA"), Defendants filed motions [DE 62; 64] requesting that the United States be substituted in place of the named Defendants pursuant to the *Westfall* Act, 28 U.S.C. § 2679(d)(3). The government has refused to certify any Defendant as an "employee of the government" for purposes of the FTCA. Defendants vigorously contend, however, they were

3

statutory employees of the government acting within the scope of their employment at the time of the incident underlying this action. Defendants argue, therefore, that they are entitled to the United States' substitution as the party defendant.

The foregoing motions have been fully briefed, the parties have argued these motions before the Court, and the motions are now ripe for adjudication. However, this Court will not reach the merits on any of those motions, as the Court is without subject matter jurisdiction to do so.

## DISCUSSION

I. <u>Legal Standards</u>

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479-80 (4th Cir. 2005). As the party asserting that this court has subject-matter jurisdiction, Plaintiffs must establish that subject-matter jurisdiction exists. *See, e.g., Steel Co.*, 523 U.S. at 104; *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. *Evans*, 166 F.3d at 647.

4

A. <u>Defendants' Motions to Dismiss</u>

The Defendants have moved to dismiss the Complaint under, *inter alia*, Rule 12(b)(1) of the Federal Rules of Civil Procedure. In support of these Motions, Defendants assert at least seven distinct arguments. Defendants contend:

(1) Plaintiffs lack standing to sue in this Court;

(2) the Complaint presents nonjusticiable political questions;

(3) Plaintiffs' claims are preempted by federal foreign policymaking authority;

(4) Plaintiffs fail to state a claim under applicable Iraqi law;

(5) Plaintiffs' claims are barred by the government contractor defense;

(6) Plaintiffs' claims are barred by absolute immunity; and

(7) Plaintiffs fail to state a claim against any of the corporate entities named as Defendants or against Defendant Erik Prince personally.

The Court finds, as Defendants contend, that Plaintiffs lack standing to sue in this Court and that dismissal of this action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore required. Dismissal will not end the action, however, since federal law requires that this case be remanded to North Carolina state court.

i. <u>Plaintiffs Lack Standing to Sue in this Court</u>

Defendants correctly assert that the Plaintiffs lack standing to sue in this Court. For a court to reach the merits of a case, the plaintiff must establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing has two distinct components: Article III's case-or-controversy requirement and the prudential limitations imposed by courts. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

5

Case 5:09-cv-00449-BO Document 156 Filed 01/26/11 Page 5 of 9

Article III standing requires: (1) that "the plaintiff must have suffered an 'injury in fact;'" (2) that "there [is] a causal connection between the injury and the conduct complained of;" and (3) that the injury is likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (citations omitted).

Unlike Article III's requirements, the prudential limitations on standing are a product of judicial self-governance, not the Constitution. *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12. One particular prudential limitation on standing is directly implicated in the instant case. An established prudential standing doctrine precludes nonresident aliens from suing in United States courts for injuries sustained outside the United States. *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 152 (D.D.C. 1976)); *Doe VIII v. Exxon Mobil Corp.*, 658 F. Supp. 2d 131, 134 (D.D.C. 2009) (quoting *Berlin Democratic Club*, 410 F.Supp. at 152 (D.D.C. 1976)); *accord Johnson v. Eisentrager*, 339 U.S. 763, 776 (1950). This rule is subject to at least two narrow exceptions: nonresident aliens may sue for injuries sustained outside the United States (1) when a "specific statutory scheme" contemplates such suits, or (2) when there is a *res* located in the United States. *Berlin Democratic Club*, 410 F. Supp. at 152.

The nonresident alien Plaintiffs before the Court, however, do not fall within any of the exceptions to the prudential bar on nonresident-alien standing. Plaintiffs are citizens and residents of Iraq (Compl. ¶¶ 10-19) suing for damages purportedly sustained in Iraq (*id.* at ¶¶ 68-78). Plaintiffs' claims are governed not by any United States statute, but instead by Iraqi tort law. Like the Plaintiff who was denied access to federal court on standing grounds in *Berlin Democratic Club*, the Plaintiffs in the present case have had "no contact with the United States other than [their interactions] abroad with private United States citizens." 410 F. Supp. at 153.

6

Plaintiffs identify no federal statute giving rise to their claims that would confer standing. *Cf. Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183, 1190 (D.C. Cir. 1972) (non-resident alien had standing to sue under federal Administrative Procedure Act). Rather than directing the Court to a federal statute that confers standing on them, Plaintiffs instead cite North Carolina cases interpreting North Carolina state law and holding that non-resident aliens are permitted to sue in North Carolina's courts. But North Carolina's permissive policy of opening its courts to nonresident aliens does not, itself, confer standing on those same plaintiffs in federal court. It is settled law that state standing rules, like the ones invoked by Plaintiffs, do not apply in federal court. *See* Wright & Miller, 13B *Federal Practice & Procedure* § 3531.14 n.34 (explaining that "standing to sue a federal agency should be controlled by federal law, preempting state law"). Accordingly, because Plaintiffs invoke no federal statute in support of their claims, they do not satisfy the "specific statutory scheme" exception under *Berlin Democratic Club*.

Nor is there a *res* within this Court's jurisdiction entitling Plaintiffs to sue in this Court. The *res* exception is satisfied where the subject of the dispute is property within the court's jurisdiction. *Constructores Civiles*, 459 F.2d at 1190 (citing, as illustrative of the *res* exception, *The Disconto Gesellschaft v. Umbreit*, 208 U.S. 570 (1908), and noting that the *Gessellschaft* Court properly invoked the *res* exception because it "had jurisdiction over assets of an insolvent debtor which it refused to allow the foreign claimant to remove"). Plaintiffs argue that the Court should treat their alleged right to recovery–that is, this case itself–as a *res* for purposes of the *Berlin Democratic Club res* exception. The subject of this dispute, however, is plainly not property or a *res* in the *Gesellschaft* sense. Were the action itself treated as *res*, like Plaintiffs

7

request, the Court would have a *res* within its jurisdiction at the moment any case was filed, and the exception would swallow the rule. A mere alleged right to recovery cannot, applying this logic, be treated as a *res*. And more importantly for the Plaintiffs, such a right to recovery cannot be used to hurdle the *Berlin Democratic Club* standing bar in their case.

Accordingly, it is the opinion of the Court that the Plaintiffs are nonresident aliens who, because they do not fall within a *Berlin Democratic Club* exception, lack standing to sue in this Court. On this finding, the Court concludes that it lacks subject matter jurisdiction over Plaintiffs' claims. Because the Court lacks subject matter jurisdiction over Plaintiffs' claims, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is GRANTED.

This Court's holding does not end this case entirely, however. Whenever a federal court determines it lacks subject matter jurisdiction over a case that originated in state court and was removed to federal court, the federal court is bound by law to remand the case to the state court where the action originated. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be remanded*.") (emphasis added). Based on this Court's prior finding that it lacks subject matter jurisdiction over the Plaintiffs' claims, the case is hereby REMANDED to the North Carolina Superior Court, Wake County.[3]

---

[3]Having granted the Defendants' respective Motions to Dismiss exclusively on standing grounds and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court finds that an analysis of the unadjudicated pending motions is inappropriate. Those motions–(1) Defendant Ridgeway's Motion to Dismiss [DE 37]; (2) Defendants Ball, Heard, Liberty, Slatten, and Slough's Motion to Substitute the United States as Defendant Under the *Westfall* Act [DE 62]; and (3) The Corporate Defendants' Motion to Substitute the United States as Defendant Under the *Westfall* Act [DE 64] –are DENIED AS MOOT.

## CONCLUSION

Based on the foregoing, Defendants Ball, Heard, Liberty, Slatten, Slough and the Corporate Defendants' respective Motions to Dismiss [DE 26; 27] are GRANTED based on the Plaintiffs' lack of standing and this Court's deprivation of subject matter jurisdiction; Defendant Ridgeway's Motion to Dismiss [DE 37] is DENIED AS MOOT; Defendants Ball, Heard, Liberty, Slatten, Slough, and the Corporate Defendants' respective Motions to Substitute the United States as Defendant Under the *Westfall* Act [DE 62; 64] are DENIED AS MOOT. Pursuant to 28 U.S.C. § 1447(d), the Clerk of this Court is ORDERED to mail a certified copy of this Order of Remand to the Clerk of the North Carolina Superior Court, Wake County.

DONE and ORDERED.

This the 25 day of January, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

9